2008 WY 57

Linda HENDRICKS, Individually and As Personal Representative for Ryan Hendricks, a Minor and as Best Friend For Her Children, Appellant (Plaintiff),

v.

John HURLEY and Maureen Hurley, Appellees (Defendants).

No. S-07-0178.

Supreme Court of Wyoming.

May 22, 2008.

Representing Appellant: Bruce S. Asay of Associated Legal Group, LLC, Cheyenne, Wyoming.

Representing Appellees: Raymond W. Martin of Sundahl, Powers, Kapp & Martin, LLC, Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] Eight-year-old Ryan Hendricks (Ryan) was electrocuted after touching an ungrounded well head at his grandparents' home. Linda Hendricks, Ryan's mother, filed a claim against the grandparents, John and Maureen Hurley (the Hurleys), alleging that they failed to use reasonable care in inspecting the well and supervising Ryan. The Hurleys filed a summary judgment motion, which the district court granted. Mrs. Hendricks appeals, claiming the district court erred in granting the motion. We affirm.

## ISSUES

[¶ 2] 1. Whether the district court properly granted summary judgment on Mrs. Hendricks' claim of negligent inspection.

2. Whether summary judgment was appropriate on Mrs. Hendricks' claims of negligent supervision, negligent infliction of emotional distress and loss of consortium.

## FACTS

On July 31, 2004, Ryan, the eight-year-old son of Shawn and Linda Hendricks (the Hendricks), was playing in the Hurleys' yard just north of Cheyenne in Laramie County, Wyoming. He stopped to get a drink of water from an outdoor hydrant in the yard. As he touched the hydrant with one hand, he also touched the wellhead located next to the hydrant. He screamed and fell to the ground where he lay unconscious. The other children with whom he had been playing thought he was joking and did not realize immediately that he was injured. When he did not respond to efforts to arouse him, one of the children summoned the Hurleys. Mr. Hurley carried Ryan to the house where he performed CPR while Mrs. Hurley called for emergency assistance.

Laramie County Sheriff Deputy Burch was one of the people who arrived at the Hurleys' home in response to the call. He spoke with one of the other children who showed him what had happened. As the child touched the hydrant and then the well cap, he screamed and said it felt like something bit him. Someone called Excel Energy and a repairman came to inspect the well. He determined there was a short at the well cap from the pump. He indicated that if Ryan had been touching the hydrant and then touched the metal well cap he would have been grounded between the two as approximately 242 volts of electricity passed through him.

[¶ 5] Emergency medical personnel were unable to revive Ryan at the Hurleys' home, and they transported him to the hospital. Further efforts to revive him there were also unsuccessful. Mrs. Hendricks, individually, as Ryan's personal representative and as best friend of Ryan's siblings, filed a complaint against the Hurleys, claiming that their negligent failure to inspect the well and supervise Ryan caused his death.[1] She claimed damages on her own behalf for negligent infliction of emotional distress and on behalf of Ryan's siblings for loss of consortium. The Hurleys filed an answer generally denying Mrs. Hendricks' claims and a third party claim against Stewart Drilling Company (Stewart Drilling), which had installed the pump.[2]

---

1. Mr. Hendricks was not a party to the action his wife filed against his mother and stepfather.

2. In the meantime, the Hendricks filed a separate action against Stewart Drilling, claiming that it negligently installed the pump and failed to warn the Hurleys of the danger, and Campbell Manufacturing, Inc., (Campbell Manufacturing), the well cap manufacturer, for strict liability in tort and negligence. The district court dismissed

██ The Hurleys also filed the summary judgment motion that is the subject of this appeal. In their brief in support of the motion, the Hurleys claimed they had no duty to inspect the well and, even assuming a duty, there was no evidence that they breached it; Wyoming has not recognized the tort of negligent supervision and, in any event, lack of supervision was not the proximate cause of Ryan's death; Mrs. Hendricks' claim for negligent infliction of emotional distress was without merit because the undisputed evidence showed that she did not observe Ryan's injury or death or its aftermath without material change in his condition or location; and, there was no basis in Wyoming law or the evidence for the loss of consortium claim. The district court granted the motion, concluding the Hurleys did not know of, and with the exercise of reasonable care would not have discovered, the unsafe condition created by the defective wiring. The court did not specifically rule on the negligent supervision, negligent infliction of emotional distress or loss of consortium claims. Its order, however, dismissed the entire complaint with prejudice.

## STANDARD OF REVIEW

[¶ 7] When reviewing an order granting summary judgment, we consider the record *de novo*. *Pittard v. Great Lakes Aviation*, 2007 WY 64, ¶ 14, 156 P.3d 964, 969 (Wyo. 2007). Our review is governed by W.R.C.P. 56(c), which provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Campbell Manufacturing pursuant to the parties' joint stipulation. The Hendricks then amended the complaint against Stewart Drilling to add claims against the City of Cheyenne for failure to warn. The district court also dismissed those claims. With only the claims against Stewart Drilling and themselves remaining, the Hurleys filed a motion to consolidate the two cases, which motion the district court granted. Stewart Drilling subsequently moved for summary

[¶ 8] In determining whether an issue of material fact exists, we view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences which may fairly be drawn from the record. *Id.*, ¶ 14, 156 P.3d at 969. A genuine issue of material fact exists when a disputed fact, if proven, would have the effect of establishing or refuting an essential element of an asserted cause of action or defense. *Id.*

██ Summary judgment is not favored in negligence actions and is, therefore, subject to more exacting scrutiny. *Jacobson v. Cobbs*, 2007 WY 99, ¶ 7, 160 P.3d 654, 656–57 (Wyo.2007). However, where the record fails to establish the existence of a genuine issue of material fact, we will affirm summary judgment even in negligence cases. *Id.*

## DISCUSSION

### 1. Summary Judgment on the Duty to Inspect

██ [¶ 10] Mrs. Hendricks' first claim against the Hurleys rested in part on an alleged duty to inspect their property for dangerous conditions. In *Landsiedel v. Buffalo Properties, LLC*, 2005 WY 61, ¶ 9, 112 P.3d 610, 613 (Wyo.2005), the district court refused to give the following jury instruction:

The owner of a business has a duty to visitors to use reasonable care to prevent or correct dangerous conditions on the premises. This duty includes the duty to inspect the premises to discover possible dangerous conditions, of which the owner does not know, and to take reasonable precautions to protect users of the premises from dangers which are foreseeable from the condition or use of the property.

On appeal, this Court upheld the district court's ruling because the instruction imposed on premises owners a duty to in-

judgment and the district court granted the motion. The Hendricks appealed that order as well as the order granting summary judgment for the Hurleys. After the appeal was filed, this Court granted a stipulated motion to dismiss the appeal with prejudice as to Stewart Drilling. Thus, the only issues remaining for determination are those relating to Mrs. Hendrick's claims against the Hurleys.

spect—a duty that has never been recognized in Wyoming. *Id.*, ¶ 20, 112 P.3d at 615. To the extent that Mrs. Hendricks' claim against the Hurleys rested on a duty to inspect, no such duty exists in Wyoming and the Hurleys were entitled to summary judgment.

[¶ 11] It is clear from the record, however, that Mrs. Hendricks' claim involved more than a duty to inspect. In her complaint and throughout the proceedings, she has alleged that the Hurleys owed a duty of reasonable care to those invited onto their property and that they breached this duty by allowing a dangerous condition to exist. She asserts that a genuine issue of material fact exists as to whether the Hurleys exercised reasonable care to discover the dangerous condition.

[¶ 12] Our cases clearly establish that in Wyoming a premises owner must use ordinary care to keep the premises in a safe condition and is charged with an affirmative duty to protect visitors against dangers known to him and dangers discoverable with the exercise of reasonable care. *Rhoades v. K–Mart Corp.*, 863 P.2d 626, (Wyo.1993). Under this standard, Mrs. Hendricks was required to demonstrate the existence of a genuine issue of material fact showing either that the Hurleys had actual notice of the danger created by the improper wiring or that with the exercise of reasonable care they would have discovered the danger.

[¶ 13] The evidence presented, viewed in the light most favorable to Mrs. Hendricks, showed that the Hurleys purchased the property in 2003, just over a year before the incident giving rise to Ryan's death. At the time they purchased the home, the Hurleys were living in California. Mrs. Hurley had seen the house once but neither she nor Mr. Hurley had the opportunity to look it over thoroughly before they purchased it. For that reason, and because they had spent most of their lives in California and were not familiar with the issues facing Wyoming homeowners, the Hurleys wanted someone local to perform a complete inspection of the home. Neither of them had ever lived in a home with a well prior to moving to Wyoming.

[¶ 14] Because the Hurleys were in California and the Hendricks lived in Cheyenne, the Hendricks assisted the Hurleys with the purchase of the home. Mr. Hendricks had the power of attorney to act for his mother and step-father with respect to the purchase and appeared at the closing on their behalf. Mrs. Hendricks worked in the mortgage department of a federal credit union and was experienced with the sale and purchase of homes and conventional loans. She helped the Hurleys with various aspects of the purchase, including, at Mrs. Hurley's request, finding someone to perform a full inspection of the home. Mrs. Hendricks testified that full home inspections were not required in Wyoming and were not normally part of the process of purchasing a new home. However, because Mrs. Hurley wanted a full inspection performed, Mrs. Hendricks asked her assistant to obtain the names of home inspectors who might be available to conduct the inspection. Her assistant obtained some names and, after speaking with Mrs. Hendricks, contacted an inspector who performed a complete inspection of the home.

[¶ 15] The Hurleys believed the full inspection included an inspection of the well. Although the cover page of the completed inspection form stated that the well was not part of the inspection, the Hurleys testified they were not aware until after Ryan's death that the well was not inspected before they purchased the home. The Hurleys had no work done on the well before Ryan's death. Mr. Hurley testified that the prior owners had not mentioned having the well serviced at any time. There simply is no evidence that the Hurleys knew or should have known of any problems with the well wiring before Ryan was injured.

[¶ 16] Mrs. Hendricks asserts in her brief that there was evidence from which the Hurleys should have discovered the unsafe condition. She claims "the proximity of the hydrant to the [well casing] pedestal, the polarity of the electrical system, [and] the visible electrical connections all indicated that there was an issue involving the safety of the premises." She also claims that the Hurleys would have known the home inspection did not include the well if they had read

the inspection report and this fact creates a jury question as to whether they exercised reasonable care.

[¶ 17] In *Goodrich v. Seamands,* 870 P.2d 1061 (Wyo.1994), a woman was struck by a falling ceiling tile and fan as she entered the restroom in a building leased to the Veterans of Foreign Wars (VFW). She claimed the building owners had reason to know of defects that caused the tile and fan to come loose because there was evidence that ceiling tiles in other areas of the building occasionally came loose when doors were shut; the owners hired the person who installed the tiles and were charged with the same knowledge he had of the defects; and the owners were required to maintain the common areas of the leased building and had owned the building for twelve years. We said:

> Essential to any negligence cause of action is proof of facts which impose a duty upon defendant. The question of the existence of a duty is a matter of law for the court to decide. A duty exists where, "upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant."

*Id.* at 1064.

[¶ 18] Applying these principles, we concluded that evidence showing the owner knew ceiling tiles in rooms other than the women's restroom occasionally moved was not sufficient to show that a reasonable person should have known that the ceiling tile and fan in the women's bathroom were improperly installed. We also concluded that the installer's possible knowledge of defects did not demonstrate that a reasonable person in the owners' position should have known of the defects. In light of the evidence that there were no problems with the restroom tile or fan during the twelve years the owners owned the building, we further concluded that the period of ownership and the fact that the lease required the owners to maintain common areas did not establish that

they should have known of the defects. We said:

> Necessary to every negligence action is proof that the defendant owed the plaintiff a duty. In this case the Seamandses had a duty to disclose only if they knew or had reason to know of the defects. Goodrich failed, however, to establish that the Seamandses had either actual or constructive knowledge of the defects and, therefore, failed to establish a duty to disclose the defective ceiling, fan and ducting. The failure to prove duty, which is a question of law, makes summary judgment in favor of the defendants, the Seamandses, proper.

*Id.* at 1065.

[¶ 19] By the same token, the Hurleys had a duty to disclose only if they knew or had reason to know of the defects. Other than her own assertions, Mrs. Hendricks presented no admissible evidence that the hydrant's proximity to the well, the polarity of the electrical system or the visible electrical connections would have put a reasonable person on notice that the wiring underneath the well cap was faulty. The electrician who inspected the well after Ryan's death discovered the problem when he removed the well cap and inspected the wiring inside. Absent evidence that the Hurleys knew or had reason to know of the danger created by the well wiring, Mrs. Hendricks cannot establish that they owed a duty giving rise to a negligence claim. In light of the failure to prove a duty, the district court properly granted summary judgment for the Hurleys on Mrs. Hendricks' first negligence claim.

## 2. Summary Judgment on the Other Claims

[¶ 20] The district court's order addressed only Mrs. Hendricks' claim for negligent inspection. Without addressing her claims for negligent supervision, negligent infliction of emotional distress or loss of consortium, the district court dismissed the complaint with prejudice. We must determine whether the record supports summary judgment as to the claims the district court did not specifically address.

### a. Negligent Supervision

[¶ 21] Mrs. Hendricks claimed the Hurleys had a duty to use reasonable care in supervising Ryan, they breached the duty and the breach caused Ryan's death. She cites *Daniels v. Carpenter*, 2003 WY 11, 62 P.3d 555 (Wyo.2003) as support for the proposition that Wyoming recognizes a duty to supervise. Specifically she cites language in *Daniels*, ¶ 21, 62 P.3d at 563, indicating that "duty exists where society says it ought to exist." She also cites *Dellapenta v. Dellapenta*, 838 P.2d 1153, 1160 (Wyo.1992) in which this Court held that parents have "a duty to buckle the seat belts of their minor passengers who are dependent on adult care and supervision for their well being and safety." Neither *Daniels* nor *Dellapenta* supports Mrs. Hendricks' assertion that a general common law duty to supervise is recognized in Wyoming.

[¶ 22] In *Daniels*, this Court upheld the dismissal of a claim for negligent supervision brought against the owners of property where three teenagers were spending the night when one of them became intoxicated, left the property with the other two, borrowed a car, and was involved in an accident in which the other two teenagers were killed. In affirming the dismissal, we applied the usual test for imposition of a duty under common law negligence, i.e., a duty of reasonable care exists to avoid injury to another person where it could be reasonably foreseen that a failure to use such care might result in such injury. *Daniels*, ¶ 21, 62 P.3d at 563. We said the property owners were not liable unless they knew or had reason to know the teenager had access to alcohol, had become intoxicated and would drive a car. We said, "An allegation of failure to supervise minors, without more, is not sufficient." *Id.*, ¶ 29, 62 P.3d at 564.

[¶ 23] In *Dellapenta*, we held that parents have a common law duty to buckle the seatbelts of their minor children. We recognized this duty in large part because of national and state statistics showing that serious injury or death is a foreseeable result of not wearing seat belts. *Dellapenta*, 838 P.2d at 1159. Our holding in *Dellapenta* was limited to its facts and cannot be construed as recognizing a general common law duty to supervise.

[¶ 24] In both *Daniels* and *Dellapenta*, the determining factor was the foreseeability of harm to the plaintiff, with the Court concluding in *Daniels* that there were no facts alleged from which it could be concluded the owners knew or had reason to know about the circumstances leading to the accident, and in *Dellapenta* that there were facts supporting the conclusion that the parent knew or had reason to know about the dangers associated with not wearing seat belts. In this case, we have already concluded there is no evidence showing the Hurleys knew or had reason to know about the dangerous condition of the well. Mrs. Hendricks has not met her burden of presenting evidence that the harm to Ryan was foreseeable.

[¶ 25] As part of her claim for negligent supervision, Mrs. Hendricks asserted that if the Hurleys had been out in the yard when Ryan collapsed, he would have received medical assistance sooner and perhaps would have survived. Mrs. Hendricks offers no medical evidence to support this assertion. Absent evidence establishing a genuine issue of material fact on the question of whether immediate emergency assistance would have saved Ryan, summary judgment was appropriate.

### b. Negligent Infliction of Emotional Distress

[¶ 26] Mrs. Hendricks also alleged that she suffered severe emotional distress as a result of witnessing her son's serious bodily injury and death. She claims that she became a witness to her son's injuries even though she was not physically present because her husband called her from the scene and described what was happening as emergency personnel tried to save him. She also claims she was a witness to the serious bodily harm inflicted upon her son and his death when she arrived at the hospital and observed emergency room personnel trying to save him and then ceasing those efforts.

[¶ 27] The Hurleys claim Mrs. Hendricks cannot recover for negligent infliction of emotional distress because she did not ob-

serve her son immediately after he was injured but saw him for the first time after he had been taken to the emergency room. Citing *Gates v. Richardson*, 719 P.2d 193 (Wyo. 1986), and subsequent Wyoming cases, the Hurleys contend Mrs. Hendricks can only recover for negligent infliction of emotional distress if she was present and observed her son's injuries, or arrived shortly after and observed his injuries without material change in his condition or location.

[¶ 28] In *Gates*, 719 P.2d at 199, we recognized a claim for negligent infliction of emotional distress by parents, spouses, children and siblings who observe the infliction of serious bodily harm or death, or its immediate aftermath without material change in the condition and location of the victim. It is undisputed that Mrs. Hendricks did not observe the infliction of Ryan's injuries or the immediate aftermath without material change in his condition and location. She first saw him at the hospital some time after he sustained the injuries.

[¶ 29] Additionally, in *Gates* we said: Once these conditions are satisfied, the case can go forward under normal negligence principles. *The defendant must have been negligent and his negligence must be the proximate cause of the plaintiff's mental injuries.*

*Id.* at 201 (emphasis added). Subsequently, in *Sims v. General Motors Corp.*, 751 P.2d 357, 366 (Wyo.1988), we reiterated that,

in order for a plaintiff to recover on a claim of negligent infliction of emotional distress, that plaintiff must show that the emotional distress resulted from death or serious physical injury to persons within a specified group *as a result of the defendant's negligence.*

We held in *Sims* that the plaintiff failed to meet her burden of showing that her emotional injuries were caused by the defendant's negligence and, on that basis, we affirmed the directed verdict the district court granted for the defendant. We have concluded that Mrs. Hendricks did not meet her burden of proving the Hurleys knew or had reason to know of the dangers that existed because of the faulty wiring. Absent such

proof, she has failed to establish the existence of a duty and her negligence claim fails. Without proof of negligence, she cannot recover for negligent infliction of emotional distress. *Id.* at 366; *Gates*, 719 P.2d at 200–01.

[¶ 30] Despite the limitations imposed in *Gates*, Mrs. Hendricks claims that this Court has expanded the circumstances under which emotional damages can be recovered. She cites *Larsen v. Banner Health System*, 2003 WY 167, 81 P.3d 196 (Wyo.2003) and *Lawrence v. Grinde*, 534 N.W.2d 414, 421 (Iowa 1995), a case cited in *Larsen*, to support her assertion. In *Larsen*, a hospital switched two babies at birth. When one of the mothers and her daughter discovered the switch 43 years later, they brought a negligence claim against the hospital, alleging purely emotional damages. This Court discussed at some length the rule in Wyoming that recovery for emotional damages is allowed only when they are accompanied by physical injury, exposure to physical harm or willful, wanton or malicious conduct. Then, in what we characterized as an "extremely limited" exception to the rule, we held that "in the limited circumstances where a contractual relationship exists for services that carry with them deeply emotional responses in the event of breach, there arises a duty to exercise ordinary care to avoid causing emotional harm." *Larsen*, ¶ 39, 81 P.3d at 206.

[¶ 31] The limited exception recognized in *Larsen* is not applicable here. There is no allegation or evidence of a contractual relationship for services between Mrs. Hendricks and the Hurleys. Mrs. Hendricks seems to be asking this Court to go beyond the exception recognized in *Larsen* and adopt another exception based solely on the relationship between the parties. It is in this context that she points to *Lawrence* where the court discussed the general rule in Iowa that in negligence cases emotional distress damages are not recoverable unless accompanied by physical injury, but also acknowledged an exception "where the nature of the relationship between the parties is such that there arises a duty to exercise ordinary care to avoid causing emotional harm." Mrs. Hendricks seems to be asking this Court to rec-

ognize a duty on the part of the Hurleys based solely upon the facts that they were Ryan's grandparents and he was playing at their home when he was hurt. We are not persuaded to go beyond the limited exception recognized in *Larsen.* Mrs. Hendricks has not presented evidence showing that she is entitled to emotional damages under any of the exceptions allowing recovery for such damages in Wyoming. Therefore, summary judgment was appropriate on her claim for emotional distress.

### c.  *Loss of Consortium*

[¶ 32]  Ms. Hendricks' final claim was for loss of consortium on behalf of Ryan's brothers. In Wyoming, a claim for loss of consortium is derivative of the injured party's claim. *Worman v. Carver,* 2002 WY 59, ¶ 31, 44 P.3d 82, 89 (Wyo.2002). Therefore, if the injured party's claim fails, the loss of consortium claim must also fail. *Id.* Because summary judgment was appropriate on Ms. Hendricks' negligence claim, the loss of consortium claim was properly dismissed.

[¶ 33]  Affirmed.