# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 42

### OCTOBER TERM, A.D. 2014

### March 24, 2015

STEVEN A. JOHNSON and KAREN
JOHNSON, Husband and Wife,

Appellants
(Plaintiffs),

v.

DALE C. and HELEN W. JOHNSON
FAMILY REVOCABLE TRUST,
BALLARD W. JOHNSON as
Co-Trustee, ARTHUR W. JOHNSON
and STEVEN A. JOHNSON as
Successor Co-Trustees,

Appellees
(Defendants).

S-14-0182

*Appeal from the District Court of Lincoln County*
*The Honorable Marvin L. Tyler, Judge*

*Representing Appellants:*
Michael D. Allen and James K. Sanderson of Sanderson Law Office, Afton, Wyoming. Argument by Mr. Allen.

*Representing Appellees:*
John D. Bowers and Spencer L. Allred of Bowers Law Firm, PC, Afton, Wyoming. Argument by Mr. Bowers.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    This appeal arises out of a dispute between Steven and Karen Johnson, Appellants, and the Dale C. and Helen W. Johnson Family Revocable Trust, Ballard W. Johnson, as co-trustee, and Arthur W. Johnson, as successor co-trustee (the Trust), Appellees.  It concerns injuries sustained by Steven Johnson when he fell off a haystack while helping his 82-year-old father feed cattle on property owned by the Trust.  The Trust moved for summary judgment, claiming that Appellants' negligence action could not survive as a matter of law because the Trust owed no duty to them and that there was no evidence that any duty was breached.  The district court granted summary judgment, holding that the Trust owed Steven Johnson no duty of care. We find that even if the Trust owed Steven Johnson the duty to exercise reasonable care, the negligence claim cannot survive because Appellants produced no evidence of a breach of that duty.  We therefore affirm.

## ISSUE

[¶2]    The issue presented by Steven and Karen Johnson is whether the district court erred in granting summary judgment.

## FACTS

[¶3]    On March 23, 2010, the day he was injured, Steven Johnson (Mr. Johnson) went to the ranch property owned by the Dale C. and Helen W. Johnson Family Trust to help his 82-year-old father, Dale, feed cattle.  Mr. Johnson was raised on the ranch and grew up helping his father with ranching operations, including feeding cattle.  He continued to help out on the ranch after he became an adult and started his own construction business.  He was fifty-seven years old on the date of the accident, and so he had decades of experience by that time.

[¶4]    He testified that the family had used the same method of feeding that he used on the date of the accident since the early 1980s.  They customarily loaded hay from a stack of bales onto a sleigh, which would then be used to transport the hay to the cattle.

[¶5]    On the day he was injured, Mr. Johnson first harnessed the team of horses and "hooked them up" to the sleigh.  Because his father Dale had trouble walking, Dale drove his four wheeler from the house to the sleigh and then got on to drive the team to the hay so that it could be loaded.  The sleigh was approximately eight feet wide and sixteen feet long, and it had been used on the ranch for as long as Mr. Johnson could remember.

[¶6]    After the sleigh was parked next to the hay bales, the person loading them would pull the string on one bale in the stack in an effort to cause several bales to fall down onto the sleigh at once.  Bales would be removed from the stack by working from the top

1

down, removing the higher layers first. After the bales at the front of the stack were removed, the person loading had to climb onto bales in the remaining lower layers to reach the bales in the higher layers further back in the stack.

[¶7]    On the date of the incident, March 23, 2010, Mr. Johnson was standing on a layer of hay bales that was approximately four feet above the sleigh. The following illustration shows the stacks of bales and sleigh.



Line indicates level at which Mr. Johnson was standing.

[¶8]    The bales above the line had already been removed and fed to the cattle, and Mr. Johnson climbed up to that level to pull on the bales higher up in the next layer. He reached up to pull the string on one of the higher bales to bring the hay down for loading. When he pulled on the string, it broke. Mr. Johnson fell off the haystack and landed on the back of his head on the bed of the sleigh. He suffered an unstable fracture of the second cervical vertebrae.

[¶9]    Appellants sued Appellees in the district court for Lincoln County, claiming that they were negligent in a number of respects, including failing to provide a safe workplace, failing to warn of unsafe conditions, and failing to provide safety training or equipment. The Trust moved for summary judgment, which was granted. The court held that Mr. Johnson was not an employee of the trust, but that he was instead acting more as an independent contractor. It concluded that there were no genuine issues of material fact

2

as to whether the Trust exercised sufficient control or undertook safety duties which imposed a duty of care to protect him from hazards incidental to feeding the cattle.

[¶10]  The court also analyzed the case from the premises liability perspective, and found that Mr. Johnson was an invitee, and that the Trust had a duty to protect him from dangers it could have discovered by the exercise of reasonable care.  It concluded that the Trust had no way of knowing that the string would break when Mr. Johnson pulled on it, and that it therefore had no duty to protect him from that hazard. It also held that Appellants raised no genuine issue of material fact as to whether anything the Trust did or failed to do proximately caused Mr. Johnson's injuries.

[¶11]  Appellants timely perfected this appeal from the order granting summary judgment.

## STANDARD OF REVIEW

[¶12]  This Court reviews summary judgment decisions de novo.  *Union Pacific R. Co. v. Caballo Coal Co.*, 2011 WY 24, ¶ 12, 246 P.3d 867, 871 (Wyo. 2011).

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards.  *Gayhart v. Goody*, 2004 WY 112, ¶ 11, 98 P.3d 164, 168 (Wyo. 2004).  Summary judgment is proper only when there are no genuine issues of material fact, and the prevailing party is entitled to judgment as a matter of law. *Id*.  Summary judgments are not favored in negligent actions. *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 12, 126 P.3d 886, 889 (Wyo. 2006).  However, summary judgments have been upheld in negligence cases where the record did not establish a genuine issue of material fact. *Id*.

*Uinta Cnty. v. Pennington*, 2012 WY 129, ¶ 11, 286 P.3d 138, 141-42 (Wyo. 2012).

[¶13]  The party requesting summary judgment bears the initial burden of establishing a prima facie case that no genuine issue of material fact exists and that summary judgment should be granted as a matter of law.  W.R.C.P. 56(c); *Throckmartin v. Century 21 Top Realty*, 2010 WY 23, ¶ 12, 226 P.3d 793, 798 (Wyo. 2010).  Until the movant has made a prima facie showing that there are no genuine issues of material fact, the non-movant has no obligation to respond to the motion with materials beyond the pleadings. *Id*.

[¶14]  Once a prima facie showing is made, the burden shifts to the party opposing the motion to present evidence showing that there are genuine issues of material fact. *Boehm v. Cody Cntry. Chamber of Commerce*, 748 P.2d 704, 710 (Wyo. 1987) (citing *England*

3

*v. Simmons*, 728 P.2d 1137, 1140-41 (Wyo. 1986)).  The party opposing the motion must present specific facts; relying on conclusory statements or mere opinion will not satisfy that burden, nor will relying solely upon allegations and pleadings.  *Boehm*, 748 P.2d at 710.  However, the facts presented are considered from the vantage point most favorable to the party opposing the motion, and that party is given the benefit of all favorable inferences that may fairly be drawn from the record.  *Caballo Coal Co.*, ¶ 12, 246 P.3d at 871.

[¶15]  Summary judgments are not favored in negligence actions and are subject to exacting scrutiny.  *Erpelding v. Lisek*, 2003 WY 80, ¶ 10, 71 P.3d 754, 757 (Wyo. 2003).  However, even in negligence actions, "where the record fails to establish an issue of material fact, [and when the movant is entitled to judgment as a matter of law], the entry of summary judgment is proper."  *Allmaras v. Mudge*, 820 P.2d 533, 536 (Wyo. 1991) (alteration in original) (citing *MacKrell v. Bell H2S Safety*, 795 P.2d 776, 779 (Wyo. 1990)).

## DISCUSSION

[¶16]  In order to establish a claim for negligence, a plaintiff must show the following: (1) the defendant owed the plaintiff a duty to conform to a specified standard of care; (2) the defendant breached the duty of care; (3) the defendant's breach of the duty of care proximately caused the plaintiff's injury or injuries; and (4) the plaintiff has suffered an injury that is compensable by money damages.  *Hatton v. Energy Electric Co.*, 2006 WY 151, ¶ 10, 148 P.3d 8, 13 (Wyo. 2006).  The fact that an injury occurred, without more, is never sufficient to establish negligence.  *Collings v. Lords*, 2009 WY 135, ¶ 10, 218 P.3d 654, 658 (Wyo. 2009); *Downen v. Sinclair Oil Corp.*, 887 P.2d 515, 520 (Wyo. 1994).

[¶17]  Although the district court found that the Trust owed Mr. Johnson no duty of care, this Court will not address that issue, because even if there was a duty of care, the Trust would still prevail as a matter of law.[1]  We acknowledge the difficulty of trying to define

---

[1] As already explained, the district court granted summary judgment in favor of the Trust, holding that as a matter of law, the trust owed no duty to Mr. Johnson at the time of his injury.  The district court examined the question of whether a duty would be imposed in this instance under theories of master-servant liability, independent contractor liability, premises liability, as well as liability that might be imposed by common law. Generally, the question of whether a duty exists is a question of law, making the absence of duty an appropriate ground for the grant of a summary judgment motion.  *Lucero v. Holbrook*, 2012 WY 152, ¶ 6, 288 P.3d 1228, 1231 (Wyo. 2012).  However, in certain cases, the existence of a duty depends upon the determination of basic facts and the determination of those facts may be properly placed before the trier of fact.  *Valance v. VI-Doug, Inc.*, 2002 WY 113, ¶ 8, 50 P.3d 697, 701 (Wyo. 2002).

Upon examination of the record, we find that there may be material facts in dispute that could potentially give rise to the existence of a duty.  For example, there may be a genuine issue of material fact as to whether Mr. Johnson could be considered an employee of the Trust and whether the Trust exercised

4

the relationship between the Trust and Mr. Johnson; in truth, he was a dutiful son helping his nearly-disabled father feed cattle as he had done for years. However, even if we assume that the Trust owed Mr. Johnson a duty of reasonable care, the record is devoid of any evidence raising a genuine issue of material fact as to whether the Trust breached that duty. As we have previously held, we may affirm an order granting summary judgment on any basis appearing in the record. *Birt v. Wells Fargo Home Mortg., Inc.,* 75 P.3d 640, 664 (Wyo. 2003) (citing *Grose v. Sauvageau,* 942 P.2d 398, 402 (Wyo. 1997)).

[¶18] Merely arguing that the Trust failed to act reasonably under the circumstances, as Appellants do at least in part, simply restates the elements required to establish negligence, and such an argument is not enough to establish that there are disputed material facts as to whether the Trust breached its duty. *See Collings*, ¶ 10, 218 P.3d at 658 (mere conjecture is never sufficient to establish liability). In short, Appellants presented no evidence indicating that a reasonable person would have acted differently than the Trust at any time leading up to the accident, although they argue that things could have been done more safely.

[¶19] Mr. Johnson's own testimony is fatal to his claim. When questioned about whether he had any concerns about the way the hay was loaded onto the sleigh, Mr. Johnson responded, "Not really, no. That's the way we done it forever." In addition, Mr. Johnson testified that he alone made the decision as to how much force to apply to pull the bale down:

> Q: . . . [I]s it fair to say you made the decision on how much force to pull on the bale?
>
> A: Right.
>
> Q: The reason I ask is your dad wasn't screaming and yelling at you to pull harder or anything like that?
>
> A: We knew if we didn't get the hay loaded he would start screaming and hollaring at us.

---

a sufficient degree of control to impose liability even if Mr. Johnson were considered an independent contractor. Although Appellants abandoned their claim that he was an employee, Mr. Johnson explained in his deposition that every year he and his brothers were each paid $3,000 and a beef cow in exchange for the work they did on the ranch. Moreover, Mr. Johnson testified that his dad had to control the way the work was done on the ranch: "[M]y dad would come out and ride on the bale so he could drive the team. That way he could feel useful and direct the operations, you know, which he had to do. He had to be in control of what was happening." In Wyoming, an employer has a duty to provide a reasonably safe workplace for it employees. *Foote v. Simek*, 2006 WY 96, ¶ 12, 139 P.3d 455, 459-60 (Wyo. 2006). And, one who employs an independent contractor may have a duty when they exercise control over the work performed by the contractor. *Jones v. Chevron, U.S.A., Inc.*, 718 P.2d 890, 893-95 (Wyo. 1986).

Q: But at that point he wasn't?

A: No.

Q: Is it fair to say that you chose the method how to load the hay and pull on the string that day?

A: Yes.

[¶20] Mr. Johnson also acknowledged that he was aware that the strings on the bales could break:

Q: . . . In your years of feeding, have you ever had bale strings break before?

A: Uh-huh. [The Court interprets this response as affirmative.]

Q: Random question, but throughout the feeding process each winter was that commonplace or unusual?

A: No, it's kind of rare. It's kind of rare.

Q: I assume you're probably using kind of a poly-nylon string?

A: Uh-huh. I think it's a 170-pound knot strength or something like that.

Q. Would you agree with me though any time you grab a bale it's a possibility that a string could break?

A: Absolutely. Because the baler cuts the string to knot it, and sometimes it will be malfunctioning and almost cut the string when it knots it.

[¶21] With regard to the claim that the Trust should have provided some kind of safety equipment, such as a harness to prevent falls, there was no evidence that the Trust failed to conform to standards of the industry or the prevailing practice in the area in not doing so.

Q: Are you in any way alleging or contending that the trust or your father should have provided you with some safety equipment?

A: No, because we never worried about that in the past. Even though it might be a safer thing to do we never did worry about safety harnesses or anything like that.

Q: Do you know of any ranches in the Star Valley Lincoln County area that provide safety harnesses?

A: Not that I'm aware of.

Although custom and practice in the community by themselves do not establish a standard of care, and they are never alone dispositive of whether negligence has occurred, adherence or failure to adhere to custom and practice can be evidence of whether conduct meets the general standard of reasonable care in the area and whether an actor has been negligent. *Caterpillar Tractor Co. v. Donahue*, 674 P.2d 1276, 1282-83 (Wyo. 1983); Restatement (Second) of Torts § 295A cmt. B (updated Mar. 2015). Mr. Johnson's testimony established that ranchers in the area did not use harnesses, and he was thus unable to raise a genuine issue of material fact in that respect.

[¶22] Finally, Appellants have presented no evidence that a reasonable person would have acted differently. Mr. Johnson testified that if he were to load hay again, he would do it the same way he did on the day the accident occurred:

Q: Are you planning on feeding in the winter at any time in the future?

A: No.

Q: If you do, will you do it in any way differently than the manner in which your father did it?

A: Probably not.

Q: That's because that's the normal way of doing it?

A: That's the best way we had of doing it.

[¶23] In short, Appellants have not presented evidence sufficient to raise a genuine issue of material fact as to whether the Trust breached a duty of reasonable care, even if the

Trust owed Mr. Johnson that level of care.[2]  We appreciate Mr. Johnson's candor, but unfortunately, this is one of the rare cases in which summary judgment must be granted because there is simply no evidence of a breach of the duty of reasonable care.

## CONCLUSION

[¶24] Viewing the facts in the light most favorable to Appellants, we hold that no reasonable finder of fact could conclude that the Trust acted unreasonably or breached a duty to Mr. Johnson.  Therefore, the district court's order granting the Trust's motion for summary judgment is affirmed.

---

[2] Appellants initially claimed that Dale Johnson caused further injury to his son by ordering him to continue to work after he fell.  That claim was abandoned on appeal, and Steven Johnson testified that his father only asked him if he could continue to work, but did not tell him to do so.  Steven continued to load bales and feed, evidently while in considerable pain, for some period of time after the fall.