2017 WY 136

Cindy WILLIAMS and William Williams, Appellants (Plaintiffs),

v.

PLAINS TIRE & BATTERY CO., INC., Appellee (Defendants).

S-17-0092

Supreme Court of Wyoming.

November 17, 2017

Representing Appellants: Richard H. Honaker, Honaker Law Offices, LC, Rock Springs, Wyoming; Robert L. Stepans and Ryan R. Shaffer, Meyer, Shaffer & Stepans, PLLP, Missoula, Montana. Argument by Mr. Shaffer.

Representing Appellee: Bruce C. Burt, Law Office of Bruce C. Burt, Midvale, Utah

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

DAVIS, Justice.

[¶1] Cindy Williams was injured when she slipped and fell outside a store operated by Plains Tire & Battery, Co. Inc. (Plains) in Evanston, Wyoming. She filed a complaint alleging that Plains was negligent in failing to maintain the area in a reasonably safe condition. Her husband, William Williams, filed a loss of consortium claim. Plains filed a motion for summary judgment, which the district court granted, finding that the Williams failed to present a genuine issue of material fact as to whether Plains breached a duty to maintain its property in a reasonably safe condition. We reverse and remand.

## ISSUES

[¶2] The primary issue for our determination is whether the district court erred in granting summary judgment for Plains.

## FACTS

[¶3] On September 27, 2010, Mrs. Williams and her brother, Wayne Campbell, took the Williams' trailer to a store operated by Plains in Evanston, Wyoming for a repair. They entered the building through a side door that led into the repair shop and found their way to the front office. After arranging for the repair, they left the same way they had come.

[¶4] They returned to the store that afternoon to pick up the trailer. They again entered the building through the side door and made their way to the front office. Mrs. Williams paid for the repairs, and they left the store, this time using the main customer door. They turned left and headed across the front of the building to the location where the trailer was parked on the side of the building.

[¶5] Photographs of the area show what appears to be an asphalt parking area in the front and on the side of the building and a narrow gravel strip running along the side of the building between the asphalt and the building. Mrs. Williams claims that as she stepped off the asphalt onto the gravel, she slipped and fell. Mr. Campbell caught her, but it was apparent that she had broken a bone in her leg. Doctors subsequently found that Mrs. Williams had suffered a compound fracture of her left ankle.

[¶6] On June 27, 2013, Mrs. Williams filed a complaint against Plains, alleging that it breached its duty of ordinary care to maintain its premises in a reasonably safe condition for members of the public. More specifically, she asserted that Plains allowed an unnatural accumulation of gravel to develop that created a slippery condition that in turn caused her fall. She sought damages, including past and future medical expenses and loss of earning capacity.

[¶7] Plains answered the complaint, denying that it was negligent. Subsequently, Mrs. Williams filed an amended complaint that named her husband as a co-plaintiff and alleged a loss of consortium claim on his behalf. Plains filed an answer denying the claims in the amended complaint.

[¶8] On October 3, 2016, Plains filed a motion for summary judgment. Citing extensively from Mrs. Williams' and Mr. Campbell's deposition testimony, Plains asserted there was no evidence showing why Mrs. Williams fell or that the rocks or gravel was an "unnatural accumulation." Plains pointed to Mrs. Williams' deposition testimony to the effect that she could not remember where, how or why she fell. Absent evidence showing how the fall occurred, Plains contended, the Williams could not establish that a duty was owed, and therefore Plains was entitled to judgment as a matter of law.

[¶9] The Williams responded, arguing that the gravel area where Mrs. Williams fell was an artificial, man-made condition, and that Plains had a duty to its customers to exercise ordinary care to maintain the area in a reasonably safe condition to protect them from foreseeable harm. They asserted that Plains breached its duty by failing to maintain the area in a reasonably safe condition.

[¶10] In support of their argument, the Williams attached excerpts of deposition testimony, interrogatory responses, photographs, the affidavit and report of an expert witness, and an interview and accident report of Plains' store manager. In accordance with W.R.C.P. 56.1, the Williams filed a statement of material facts precluding summary judgment, which is a useful summary of their contentions.[1] Among the facts alleged to be disputed in the statement were the following:

- When Mrs. Williams and Mr. Campbell arrived at Plains' store to pick up the trailer, it was parked on the west side of the property;
- Mr. Campbell parked his truck near the trailer on the west side of the property;
- When Mrs. Williams and Mr. Campbell left the building after paying for the repairs, they walked along the edge of the building toward the trailer and the unpaved, gravel slope;
- Mrs. Williams fell when she stepped onto the gravel slope;
- The gravel slope on Plains' property was created to facilitate drainage away from the building;
- The gravel slope lies within the ingress/egress of the store and fails to comply with applicable building codes;
- There was no designated sidewalk or walkway in front of the store;
- There was no physical barrier blocking customers from walking across the gravel slope;
- There was no sign directing customers not to walk across the gravel slope;
- Plains' store manager filled out an accident report after Mrs. Williams fell in which he recommended that tires be piled up between the pavement and gravel slope to reduce the chance of another accident;
- When Mr. Campbell returned to Plains' store the next day, tires were piled where Mrs. Williams had fallen, preventing customers from walking on the gravel slope.

[¶11] Plains filed a reply to the Williams' response, again asserting that no genuine issue of material fact existed because the only two eye-witnesses to the fall, Mrs. Williams and Mr. Campbell, testified that they did not know where, how or why Mrs. Williams fell. Plains also filed a motion to strike an expert witness report and affidavit, arguing that given Mrs. Williams' and Mr. Campbell's testimony that they did not know how, where or why she fell, the expert's conclusions lacked foundation and were inadmissible. The Williams responded,[2] claiming

---

1. Of course, statements of disputed facts under Rule 56.1 do not establish those facts standing alone. Rule 56.1 statements are only intended "to identify just what facts are actually in dispute." *Herling v. Wyoming Machinery Co.*, 2013 WY 82, ¶ 62, 304 P.3d 951, 966 (Wyo. 2013) (quoting *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000), and citing *N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (noting that Rule 56.1 statements are "essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of hunt[ing] through voluminous records without guidance from the parties.")).

2. W.R.C.P. 6(c)(1) (now W.R.C.P. 6(c)(3), effective March 1, 2017) provided that "[u]nless the court otherwise orders, any party may serve supplemental memoranda or rebuttal affidavits at

the record contained ample evidence that Mrs. Williams fell on the gravel slope between the entrance to the store and where the trailer was parked, and that their expert witness relied on that evidence in formulating his opinions.

[¶12] After a hearing, the district court entered an order granting Plains' motion for summary judgment. The district court held that no genuine issues of material fact existed as to whether Plains breached a duty to maintain its property in a reasonably safe condition. In reaching that result, the district court rejected the Williams' expert witness' conclusions finding them unsupported by the evidence. The Williams timely appealed from the district court's order.

## STANDARD OF REVIEW

[¶13] We apply the following standard of review to a district court's grant of summary judgment in a negligence case:

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards. *Gayhart v. Goody*, 2004 WY 112, ¶ 11, 98 P.3d 164, 168 (Wyo. 2004). Summary judgment is proper only when there are no genuine issues of material fact, and the prevailing party is entitled to judgment as a matter of law. *Id.* . . .
>
> . . . .
>
> Summary judgments are not favored in negligence actions and are subject to exacting scrutiny. *Erpelding v. Lisek*, 2003 WY 80, ¶ 10, 71 P.3d 754, 757 (Wyo. 2003). However, even in negligence actions, "where the record fails to establish an issue of material fact, [and when the movant is entitled to judgment as a matter of law], the entry of summary judgment is proper." *Allmaras v. Mudge*, 820 P.2d 533, 536 (Wyo. 1991) (alteration in original) (cit-

least one day prior to the hearing on the motion."

**3.** This argument does not track the process for summary judgment. The amended complaint pled that Mrs. Williams fell on "an unnatural accumulation of gravel." A "party requesting summary judgment bears the initial burden of establishing a prima facie case that no genuine

ing *MacKrell v. Bell H2S Safety*, 795 P.2d 776, 779 (Wyo. 1990)).

*RB, Jr. v. Big Horn Cty. Sch. Dist. No. 3*, 2017 WY 13, ¶ 6, 388 P.3d 542, 545 (Wyo. 2017) (quoting *Amos v. Lincoln Cty. Sch. Dist. No. 2*, 2015 WY 115, ¶ 15, 359 P.3d 954, 958-59 (Wyo. 2015)).

## DISCUSSION

### 1. Summary Judgment

[¶14] As a preliminary matter, we address the Williams' claim that the district court improperly granted summary judgment for Plains on the basis of an issue that Plains did not raise in its motion, i.e. whether a genuine issue of material fact existed showing that Plains breached its duty to maintain its property in a reasonably safe condition. The Williams contended the issue Plains presented in its motion was whether it <u>owed</u> a duty to maintain its property in a reasonably safe condition, not whether it <u>breached</u> any such duty. Citing *Trefren Construction Co. v. V&R Construction, LLC*, 2016 WY 121, 386 P.3d 317 (Wyo. 2016), the Williams asserted it is reversible error for a district court to grant summary judgment on an issue not raised or briefed by the movant.

[¶15] Plains responded that it asserted the absence of both a duty and a breach in its summary judgment argument, and that therefore *Trefren* has no application to this case. Plains also contends that even assuming its argument focused on the absence of a duty, the district court acted properly in deciding the motion on the corollary issue that no evidence existed that Plains breached a duty owed.

[¶16] Contrary to Plains' assertion, the focus of its argument in its summary judgment brief was the alleged lack of evidence showing that Mrs. Williams fell on an unnatural accumulation of gravel and that "therefore, there [was] no duty owed."[3] De-

issue of material fact exists and that summary judgment should be granted as a matter of law. Until the movant has made a prima facie showing that there are no genuine issues of material fact, the non-movant has no obligation to respond to the motion with materials beyond the pleadings." *Amos*, ¶ 15, 359 P.3d at 958. It is questionable whether the natural accumulation rule applies here since our case law on that issue

spite, the focus of Plains' argument, the Williams are correct that the district court did not expressly address whether Plains owed a duty to Mrs. Williams but held instead that there was no evidence showing Plains breached any duty owed. It is not entirely clear from the district court's order whether it concluded that Plains owed Mrs. Williams a duty, but found summary judgment appropriate because she failed to present sufficient evidence of a breach, or whether it found it unnecessary to decide whether Plains had a duty because the Williams failed to show a breach. We find that the Williams presented genuine issues of material fact sufficient to survive the summary judgment motion as to both the existence of a duty and a breach, and therefore it is unnecessary to consider the Williams' claim that the district court ruled on an issue not presented.

[¶17] To survive summary judgment the Williams had to identify genuine issues of fact and principles of law supporting these elements: 1) Plains owed Mrs. Williams a duty to conform to a specified standard of care; 2) Plains breached the duty; 3) the breach proximately caused Mrs. Williams' injury; and, 4) the injury was compensable in money damages. *RB*, ¶ 13, 388 P.3d at 546-47 (citing *Valance v. VI-Doug, Inc.*, 2002 WY 113, ¶ 8, 50 P.3d 697, 701 (Wyo. 2002)). Generally, the question of whether a duty exists is a question of law, making the absence of duty an appropriate ground for granting summary judgment. *Johnson v. Dale C. and Helen W. Johnson Family Revocable Trust*, 2015 WY 42, ¶ 17 n.1, 345 P.3d 883, 887 n.1 (Wyo. 2015) (citing *Lucero v. Holbrook*, 2012 WY 152, ¶ 6, 288 P.3d 1228, 1231 (Wyo. 2012)).

[¶18] Wyoming law is clear that "a premises owner must use ordinary care to keep the premises in a safe condition and is charged with an affirmative duty to protect visitors against dangers known to him and dangers discoverable with the exercise of reasonable care." *Amos*, ¶ 20, 359 P.3d at 960

has dealt with natural accumulations of ice and snow, and in one case wind—i.e., the products of weather. *See Valance v. VI-Doug, Inc.*, 2002 WY 113, ¶¶ 11-12, 50 P.3d 697, 702-03 (Wyo. 2002). That issue aside, Plains made no showing as to

(quoting *Hendricks v. Hurley*, 2008 WY 57, ¶ 12, 184 P.3d 680, 683 (Wyo. 2008)). In *Amos*, a boy was killed when a lunchroom bench that had been propped against the wall tipped over and fell on top of him. The district court held, and this Court agreed, that the school district that owned the building "owed all persons entering the building as invitees the duty of reasonable and ordinary care under the circumstances." *Amos*, ¶¶ 10, 20, 359 P.3d at 957, 960.

[¶19] Similarly, in *Rhoades v. K-Mart Corp.*, 863 P.2d 626 (Wyo. 1993), where a customer slipped on water that had been spilled on an aisle floor, the Court stated the store owner had the duty to "use ordinary care to keep the premises in a safe condition, and ... an affirmative duty to protect visitors against dangers known to him and against dangers which he might discover by use of reasonable care." *Id.* at 629. The existence of a duty having been confirmed in *Amos* and *Rhoades*, the relevant question was whether the property owners breached their duty, a question which this Court held in both cases was for the jury. *Amos*, ¶ 25, 359 P.3d at 961; *Rhoades*, 863 P.2d at 631.

[¶20] The cases in which this Court has held that as a matter of law a property owner did not have a duty to persons using their property are distinguishable from the present case. In *Hendricks v. Hurley*, a boy was killed when he stopped to get a drink of water from an outdoor hydrant in the yard where he was playing. As he touched the hydrant with one hand, he touched a nearby wellhead and was electrocuted. His mother filed a negligence claim against the property owners. The Court stated,

[Mother] presented no admissible evidence that the hydrant's proximity to the well, the polarity of the electrical system or the visible electrical connections would have put a reasonable person on notice that the wiring underneath the well cap was faulty. The electrician who inspected the well after [the boy]'s death discovered the prob-

the history of the gravel on which Mrs. Williams allegedly slipped, and so the burden to show its origin, if there was one, never shifted to her on summary judgment.

lem when he removed the well cap and inspected the wiring inside. Absent evidence that the [property owner] knew or had reason to know of the danger created by the well wiring, [Mother] cannot establish that they owed a duty giving rise to a negligence claim.

*Hendricks*, ¶ 19, 184 P.3d at 684. Unlike the well wiring in *Hendricks*, the gravel area abutting Plains' store was clearly visible, and Plains owed all persons entering the property as invitees the duty of reasonable and ordinary care under the circumstances.[4]

[¶21] Other cases in which this Court has concluded that no duty existed as a matter of law have involved inherent risks, *Creel v. L&L, Inc.*, 2012 WY 124, 287 P.3d 729 (Wyo. 2012); naturally occurring hazards that the landowner did not create or aggravate, *Berry v. Tessman*, 2007 WY 175, 170 P.3d 1243 (Wyo. 2007); and known and obvious dangers, *Radosevich v. Board of Cty. Comm'rs of Cty. of Sweetwater*, 776 P.2d 747 (Wyo. 1989). *See also Allen v. Slim Pickens Enterprises*, 777 P.2d 79 (Wyo. 1989) (the owner of a vacant cabin owed no duty to an unexpected visitor to remove naturally growing grass around the steps).

[¶22] In support of its argument that it owed no duty to Mrs. Williams, Plains points to the following statements in *Radosevich*, 776 P.2d at 749:

An occupier of land's duty is to protect an invitee against *unreasonably* dangerous conditions, not against every conceivable risk of injury. The mere fact that an injury occurred does not establish that a condition was unreasonably dangerous, nor does testimony that the danger was "known" or "obvious."

In *Radosevich*, the plaintiff was injured when he fell into a concrete pit located on land leased by the county. The pit was used for dumping trash and had a two-foot concrete wall along one edge to keep vehicles from backing into it. The plaintiff had backed his pickup up to the concrete wall, climbed onto the wall and was standing on it, throwing trash into the pit when he lost his balance and fell into it. He claimed the wall was negligently designed in that it should have been wider if it was intended to stand on; otherwise, measures should have been taken to prevent people from standing on it. In that context, the Court made the statements Plains relies on. And in that context, the Court held that summary judgment was appropriate for the county because there were no material facts showing that the wall was dangerous when used for its intended purpose. *Id.* at 750.

[¶23] Unlike the plaintiff in *Radosevich*, Mrs. Williams was not using Plains' property in an unintended or unusual manner. She was walking from the front door of the building to the area where the trailer and her brother's vehicle were parked. Whether a property owner's conduct is reasonable is, in the vast majority of cases, to be determined by the jury. *Amos*, ¶ 18, 359 P.3d at 959 (citing *Jackson Hole Mt. Resort Corp. v. Rohrman*, 2006 WY 156, ¶ 8, 150 P.3d 167, 170 (Wyo. 2006)). "It is only in the clearest of cases, when the facts are undisputed and it is plain that all intelligent [persons] can draw but one inference from them, that the question is ever one of law for the court." *Id.*

[¶24] Mrs. Williams testified that she left Plains' building through the front door. She drew a line on a photograph taken of the front and side of the building showing that she turned left, walked across a paved drive or parking area in front of a large bay door and turned the corner onto a gravel area alongside the building. She testified that she thought she fell in the area depicted in the photograph past the large bay door where tires were placed after she fell to keep others from walking there. She testified that she remembered there was a transition from pavement to dirt or gravel but she did not

---

4. This point in *Hendricks* triggers a brief discussion of the open and obvious danger rule. The gravel in question may have been an open and obvious danger. However, we have held that the jury should consider whether a danger was open and obvious in assessing comparative fault, and that this factor is not to be weighed by the court in determining whether there was a duty of care or a breach thereof. *Pinnacle Bank v. Villa*, 2004 WY 150, ¶¶ 12-14, 100 P.3d 1287, 1291-92 (Wyo. 2004); *Valance*, ¶ 10, 50 P.3d at 702 (citing *Eiselein v. K-Mart, Inc.*, 868 P.2d 893, 895-97 (Wyo. 1994)).

remember whether she had stepped onto the gravel when she fell. She further testified that the unevenness from the pavement to gravel caused her to fall.

[¶25] Mrs. Williams' brother also testified that when they left the store they turned left and passed the large bay door. He testified his sister was in front of him and when she reached the spot where the tires were in the photograph, she stepped off the pavement onto the gravel[5] and slipped. He specifically testified that her feet were in the gravel and there was an indentation approximately one-quarter inch deep where her feet slipped. He drew an X on the photograph showing where she fell near the building and described it as steeper at the time she fell than the photograph depicted. He testified that it appeared to him that the slope had been smoothed or graded after she fell.

[¶26] In an interview conducted after Mrs. Williams' fall, Plains' store manager stated that she was not walking on the pavement when she fell, but rather on the gravel adjacent to the building. He indicated that people should not walk there, but instead should stay on the paved parking area. He also admitted, however, that there was no sign telling people not to walk on the gravel, and the area was not blocked off to keep people from walking there. The store manager filled out an accident report in which he recommended leveling and paving the spot where Mrs. Williams fell but "for now" putting tires there, which the record reflects was done.[6][7]

---

5. Appellants' expert Dennis Brunetti attested by affidavit that the gravel was "pea gravel" based on photographs of the area attached to Mr. Campbell's deposition. Mrs. Williams also characterized the substance as pea gravel, or like pea gravel. Pea gravel is screened gravel, most of the particles of which will pass through a 9.5 mm sieve and be retained in a 4.75 mm sieve. *See* http://www.dictionaryofconstruction.com/ definition/pea-gravel.html. Apropos of the earlier discussion of natural accumulation, it seems unlikely that screened gravel would occur naturally, an inference in Appellants' favor on that point. Whether that inference is warranted on the evidence presented at trial is something we do not determine.

6. As photos in the record indicate, tires were in fact placed near the area where Mrs. Williams and Wayne Campbell say she had fallen. The tires would presumably have made it so that customers following the general path they did would walk onto the paved parking area rather than on the gravel because of the obstruction they presented. Plains argues that this evidence would be inadmissible under W.R.E. 407. That rule, which is similar to F.R.E. 407, provides that:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

W.R.E. 407. The rule permits the admission of evidence for purposes other than proving negligence. As one leading commentator discussing the federal rule points out:

> Many purposes are beyond reach of the exclusionary principle, and evidence of subsequent measures is so often admitted, that perusing the cases quickly convinces any observer that Rule 407 often does *not* block proof of subsequent measures. (This provision is often cited as Fed. R. Evid. 407.) The plain fact is that such proof often comes in unless the opponent virtually concedes points on which the evidence might bear. Of course a limiting instruction can be had, for whatever comfort that can provide.

2 Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence* § 4.52 (4th ed., 2017 update). One such permissible purpose at trial might be to prove the location of the fall in relation to the position of the tires. Another would be to prove the feasibility of placing tires in the area in question to prevent customers from walking there. Proving feasibility is by far the most common reason for admitting subsequent remedial measures. *Id.* The record on summary judgment is sufficient to allow us to consider this evidence. If the case is tried, it will be up to the district judge to decide whether the evidence is admissible based on the proof submitted at that time. This opinion is not intended to suggest whether it is admissible or not.

7. Plains also argues that the store manager's statements lack foundation. The record reflects that he was the store manager at the time they were made. The statements were probably not hearsay under W.R.E. 801(d)(2)(B), (C), or (D) (statements by an agent which the principal has adopted or manifested belief, statements by a person authorized to make such statements, or a statement concerning a matter within the scope of his agency or employment). Although there may be exceptions, there is generally no personal knowledge requirement as to admissions by agents falling within these subsections. 2 Mueller and Kirkpatrick, *supra*, § 8.50. A showing of expertise may be required if a topic requires such expertise. *Id.* However, it does not seem to re-

His statement indicated that he saw and spoke with Mrs. Williams while she was lying on the ground. Another Plains representative testified it was her understanding that Mrs. Williams fell "on the dirt and gravel on the natural slope where water comes down from the foundation ... somewhat close to the building."

[¶27] The Williams submitted the affidavit and report of Dennis Brunetti, a certified building inspector with thirty-five years' experience, who reviewed the complaint, deposition of Mrs. Williams' brother, photographs, and store manager's accident report and concluded, among other things, that Plains' violated the International Building Codes by not maintaining exterior property spaces and means of egress free from hazardous conditions.

[¶28] Plains contends that the expert affidavit and report were insufficient to create a genuine issue of material fact.[8] W.R.C.P. 56(e) requires that an affidavit (1) be made on personal knowledge; (2) set forth facts which are admissible in evidence; (3) demonstrate the affiant's competency to testify on the subject matter of the affidavit; and (4) have attached to it the papers and documents to which it refers.[9] *M & M Auto Outlet v. Hill Inv. Corp.*, 2010 WY 56, ¶ 33, 230 P.3d 1099, 1110 (Wyo. 2010). Of course, "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data

need not be admissible in evidence." W.R.E. 703.

[¶29] The affidavit states that it was based on Mr. Brunetti's personal knowledge, that he had over thirty-five years of experience as a building inspector and that he worked for Information Consultants, LLC as a consultant. It also indicated he was retained by the Williams' attorneys to review records and offer opinions about the condition in which Plains maintained its store in Evanston, and that his opinions and the factual basis for them were contained in his report, which was attached and incorporated. The attached five-page report described the documents he reviewed and his opinions. It summarized the codes and definitions he relied upon in formulating those opinions.

[¶30] Although we agree with the district court that not all of Mr. Brunetti's opinions necessarily hold up now or that they will at trial, key portions are sufficient to raise genuine issues of material fact. He opined that the gravel area was in an area of ingress and egress as defined by the International Building Code (2003 Edition), the Uniform Building Code (1976 and 1979 Editions), and the International Property Maintenance Code (2006 Edition).[10] He also opined that the codes required a clear, continuous and unobstructed path of egress from the building, and that the presence of a gravel slope on which one could slip would violate this requirement. The testimony and evidence provided by the Williams and the admissions by the store manager generated another genuine issue of material fact as to whether Mrs. Williams slipped on this gravel, for reasons already explained. As discussed above in

quire special expertise to determine what steps can be taken to keep customers from walking in a certain area or to eliminate a gravel-covered slope that may be a fall hazard. Whether a property owner should do so is another question. As with the evidence discussed in footnote 6, the record before us allowed us to consider the store manager's statements on summary judgment, but the trial judge will have to determine admissibility at trial based on evidence presented.

8.  Plains also claims that the district court struck portions of Mr. Brunetti's affidavit and attached report. The district court took issue with and disregarded aspects of the report, but did not strike it or the opinions expressed therein.

9.  W.R.C.P. 56 has been revised effective March 1, 2017, and the language in subsection (e) is now found at W.R.C.P. 56(c)(4). Item (4), "have attached to it the papers and documents to which it refers," has been omitted in the new version.

10.  The parties have not enlightened us as to which of these codes the City of Evanston had adopted when Mrs. Williams was injured, although the current city code has adopted a version of the International Building Code. City of Evanston Wyoming Code, § 7-7. For a discussion of violations of building codes as evidence of negligence, *see Frost v. Allred*, 2006 WY 155, ¶¶ 8-17, 148 P.3d 17, 19-21 (Wyo. 2006).

footnote 4, *supra*, whether she was comparatively at fault for slipping and falling on the gravel because it was open and obvious is also a question of fact.

[¶31] Although it is a close question, when we view the evidence in the light most favorable to the Williams and give them the benefit of all favorable inferences that may be fairly drawn from it, we must find that a genuine issue of material fact existed as to the reasonableness of Plains' conduct in allowing the gravel slope to remain on its property where it was foreseeable that customers would walk. We therefore reverse the district court's order granting summary judgment and remand for further proceedings consistent with this opinion.