# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 18

**OCTOBER TERM, A.D. 2014**

**February 4, 2015**

NICOLE HALVORSON,

Appellant
(Plaintiff),

v.

SWEETWATER COUNTY SCHOOL DISTRICT
NO. 1,

Appellee
(Defendant).

SWEETWATER COUNTY SCHOOL DISTRICT
NO. 1,

Appellant
(Defendant),

v.

NICOLE HALVORSON,

Appellee
(Plaintiff).

S-14-0083, S-14-0084

*Appeal from the District Court of Sweetwater County*
*The Honorable Richard L. Lavery, Judge*

*Representing Nicole Halvorson:*

*Vance T. Countryman, Vance T. Countryman, P.C., Lander, Wyoming; Robert T. Ingram, Ingram Olheiser, P.C., Casper, Wyoming. Argument by Mr. Ingram.*

*Representing Sweetwater County School District No. 1:*

 *Clark D. Stith, Stith Law Office, Rock Springs, Wyoming.*

**Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.**

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]   Nicole Halvorson filed suit against Sweetwater County School District No. 1 (School District) after she slipped and fell in the locker room of Rock Springs East Junior High School.  She claimed the School District had negligently failed to operate and maintain the shower facilities in the locker room in a reasonably safe condition.  Following a bench trial, the district court granted judgment in favor of the School District.  In Docket No. S-14-0083, Ms. Halvorson challenges the district court's judgment in favor of the School District.  In Docket No. S-14-0084, the School District challenges the denial of its motion for summary judgment.  We affirm the district court's judgment in favor of the School District in Docket No. S-14-0083 and decline to review the court's ruling on summary judgment in Docket No. S-14-0084.

## *ISSUES*

[¶2]   In Docket No. S-14-0083, Ms. Halvorson presents a single issue, which we rephrase as follows:

> 1.  Whether the district court erred in granting judgment in favor of Appellee, Sweetwater County School District No. 1.

In Docket No. S-14-0084, the School District presents the following two issues:

> 1.  Whether the District Court erred by denying Defendant's Motion for Summary Judgment.
>
> 2.  Whether the District Court erred by finding that the Wyoming Recreation Safety Act did not apply where injury occurred in a girls' swimming pool locker room after showering.

## *FACTS*

[¶3]   In September 2007, Ms. Halvorson was enrolled in the eighth grade at East Junior High School in Rock Springs, Wyoming.  As part of her curriculum, Ms. Halvorson was required to take a swimming class at the school.  On the fourth day of the school year, after her swimming class was finished, Ms. Halvorson returned to the girls' locker room to shower and get dressed.  While crossing the locker room to borrow a friend's comb, Ms. Halvorson slipped and fell in the dressing area of the locker room.  Ms. Halvorson was subsequently diagnosed with a disc herniation in her lumbar spine, and she underwent three surgeries as a result of the herniation.

1

[¶4]   On October 15, 2009, Ms. Halvorson filed suit against the School District claiming that it had been negligent "in the operation and maintenance of the Rock Springs East Junior High School building." She alleged that, as a result of improper drainage in the shower drain, "water from the shower built up within the curb around the shower area to the point it spilled over the curb and flowed onto the dressing area" of the locker room. In July 2012, the School District filed a motion for summary judgment claiming that (1) it had no duty to Ms. Halvorson because it did not have notice of an unsafe condition, and that (2) it was entitled to immunity under Wyoming's Recreation Safety Act (WRSA) because Ms. Halvorson had assumed an inherent risk of swimming at the time she was injured. The district court denied the motion.

[¶5]   The matter then proceeded to a bench trial. At trial, Ms. Halvorson attempted to demonstrate that water had backed up in the drain in the floor of the locker room near where she fell. Evidence introduced at trial showed that the locker room is "L" shaped, with a communal shower at one end of the room, and a toilet and sink at the other end. The drainage system is composed of three drains and a drainpipe. The drainpipe has its highest point in the communal shower and descends to a second drain in the dressing area where Ms. Halvorson fell and then to a third drain located between the door and the sink. Ms. Halvorson's theory at trial was that, due to a blockage in the drain near the lowest portion of the locker room, water backed up in the communal shower as well as in the drain in the dressing area.

[¶6]   Following trial, the court entered its Findings of Fact, Conclusions of Law, and Judgment in favor of the School District. The court was not persuaded by Ms. Halvorson's argument that water had backed up in the drain in the dressing area of the locker room:

> The Plaintiff contends sound logic dictates that because drainpipes slope down and the shower drains were at the end of the pipe, the locker room drains must be lower than the shower drains. Consequently, the Plaintiff contends, when there was flooding in the shower, there must have been flooding in the locker room. This argument is not persuasive; it attempts to explain too much. Several of the witnesses testified to substantial – one to several inches – standing water in the shower. Yet if the Plaintiff's argument holds, then flooding would have been even worse in the locker room. There's no credible explanation in the Plaintiff's argument for why no one would remember that severe of flooding in the locker room, and it's inconsistent with the Plaintiff's own testimony that there was only nine to twelve inches of water (like a puddle on the street) around the locker room drain where she slipped.

The court further determined that the School District did not have actual or constructive notice of an unsafe condition in the locker room at the time of Ms. Halvorson's accident. Accordingly, the court found that the School District did not have a duty to fix a known unsafe condition. The district court also recognized, however, that "failure to comprehend and recognize danger may in itself constitute negligence." On this point, the court found that "the Plaintiff has not proved that excessive or unreasonably dangerous amounts of water or soapy water existed on the floor of the locker room at the time the Plaintiff fell." Ultimately, the court concluded that "A reasonable person would not be troubled by the possibility of a temporarily backed up drain in a pool locker room because the floor of a pool locker room is designed to accommodate and will inevitably have some soapy water." On the question of whether the School District was protected from liability under the WRSA, the court determined that slipping in a locker room is not an inherent risk of swimming.

[¶7]   Ms. Halvorson appealed the district court's judgment in favor of the School District.  The School District filed a cross-appeal challenging the district court's denial of its motion for summary judgment. The appeals were consolidated for argument and decision.

## DISCUSSION

**Docket No. S-14-0083**

[¶8]   In Docket No. S-14-0083, Ms. Halvorson appeals the district court's entry of judgment in favor of the School District. We apply the following standard when reviewing a trial judge's decision after a bench trial:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail weighing disputed evidence. Findings of fact will not be set aside unless the findings are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. We review a district court's conclusions of law *de novo* on appeal.

*Henry v. Borushko*, 2012 WY 104, ¶ 6, 281 P.3d 729, 731 (Wyo. 2012).

[¶9]    In order to establish a claim of negligence, a plaintiff must prove: (1) the defendant owed the plaintiff a duty of reasonable care; (2) the defendant breached the duty; and (3) the defendant's breach was the proximate cause of injury or loss to the plaintiff. *Collings v. Lords*, 2009 WY 135, ¶ 6, 218 P.3d 654, 656 (Wyo. 2009).  Ms. Halvorson brought suit against the School District under a theory of premises liability, claiming that the School District had been negligent in the operation and maintenance of the shower facilities in the girls' locker room.  In Wyoming, this theory provides that a landowner must (1) use ordinary care to keep the premises in a reasonably safe condition, and (2) protect visitors against known dangers and dangers that are discoverable by use of reasonable care. *Rhoades v. K-Mart Corp.*, 863 P.2d 626, 629 (Wyo. 1993); *Downen v. Sinclair Oil Corp.*, 887 P.2d 515, 518 (Wyo. 1994). The district court applied the definition of ordinary care set forth in Wyoming Civil Pattern Jury Instruction 3.02 (2013), which provides that "Ordinary care means the degree of care which should reasonably be expected of the ordinary careful person under the same or similar circumstances."  With respect to the affirmative duty to protect against known dangers, a plaintiff may demonstrate negligence by showing that the landowner had actual or constructive notice of the dangerous condition, and failed to repair it. *Rhoades*, 863 P.2d at 629 (citing *Buttrey Food Stores Div. v. Coulson*, 620 P.2d 549, 552 (Wyo. 1980)). Actual or constructive notice is not required, however, when the "operating methods of a proprietor are such that dangerous conditions are continuous or easily foreseeable." *Rhoades*, 863 P.2d at 630.  This rule is referred to as the "operating methods rule."

[¶10] Ms. Halvorson claims that the district court's conclusion that the School District did not have actual or constructive notice of an unsafe condition in the locker room is clearly erroneous.  She also claims, however, that actual or constructive notice was not required under the operating methods rule.  Ms. Halvorson contends that the district court "failed to apply the operating methods rule to the undisputed evidence of recurring problems with, and blockages in, the shower room drain system."  Ultimately, she claims the district court erred in concluding that the School District exercised ordinary care to keep the premises in a safe condition.[1]

---

[1] Ms. Halvorson also devotes a substantial portion of her brief to the claim that the School District owed her a heightened standard of care because she was a minor at the time of the accident and because school attendance is compulsory.  However, she did not provide any meaningful argument or authority supporting a heightened standard of care in the proceedings before the district court and she does not contend that the district court erred in applying a standard of ordinary care to keep the premises in a reasonably safe condition.  Indeed, in her proposed Findings of Fact and Conclusions of Law, Ms. Halvorson described the applicable standard of care as follows: "The Defendant and its employees owed a duty to the students, to include Plaintiff, to keep the floor drains free of debris and to prevent the accumulation of shower water, conditioner and shampoo around the floor drains in the communal locker room."  Because Ms. Halvorson did not meaningfully advocate a heightened standard of care in the proceedings below, we decline to consider her argument on appeal. *State ex rel. Dep't of Family Servs. v.*

4

[¶11] Whether the School District exercised ordinary care is a question of fact. *Hincks v. Walton Ranch Co.*, 2007 WY 12, ¶ 18, 150 P.3d 669, 672 (Wyo. 2007) (a question of material fact existed for jury determination as to whether the livestock owner exercised reasonable care to prevent cattle from escaping from his pasture onto a public highway); *see also Loredo v. Solvay America, Inc.*, 2009 WY 93, ¶ 17, 212 P.3d 614, 628 (Wyo. 2009); *Cordero Mining Co. v. United States Fid. & Guar. Ins. Co.*, 2003 WY 48, ¶ 30, 67 P.3d 616, 626 (Wyo. 2003) (whether a party injured due to the negligence of another is generally a question of fact). Accordingly, we must uphold the district court's determination that the School District exercised ordinary care unless, after reviewing the entire record, we are left with the definite and firm conviction that a mistake has been made. After conducting a review of all of the evidence, we find no clear error in the district court's conclusion that the School District exercised ordinary care to keep the shower facilities in a reasonably safe condition.

[¶12] First, we note that witness testimony was not consistent on the issue of whether water was backed up in the dressing area of the locker room, where Ms. Halvorson fell. Several students offered testimony relating to the amount of water that collected in the showers. The first student, a classmate of Ms. Halvorson's, stated that she did not "think there was any water collecting" in the shower during the first week of school. A second student stated in her deposition testimony that she did not ever see water build up around the shower room or the shower room drains. However, this testimony contradicted her statements at trial, where she testified that the water would "build up and usually get an inch high, maybe." A third student, another classmate of Ms. Halvorson's, testified that she recalled standing water in the shower as a frequent occurrence. However, she stated that she did not ever recall an incident in which water pooled to the level of the curb surrounding the shower area causing it to spill into the dressing area of the locker room. A fourth student testified that the curb around the shower area blocked water from escaping the showers, but that "it didn't help all the time." She stated that both the shower and dressing area drains were clogged and that "[t]here would be water coming up" and accumulating around the drains. Finally, Ms. Halvorson testified that water accumulated in the shower area as well as the dressing area of the locker room. She stated that she slipped in a puddle surrounding the drain in the dressing area.[2]

[¶13] The district court found that the first and third students were credible witnesses.

---

*Kisling*, 2013 WY 91, ¶ 16, 305 P.3d 1157, 1163 (Wyo. 2013).

[2] The record does not indicate the exact ages of the students who testified. Because we cannot confirm that the students had reached the age of majority, we refrain from identifying the students by name. *See* Rule 1(b) of the Rules Governing Redactions from Court Records.

The court, however, expressed credibility concerns regarding the testimony of the other students and Ms. Halvorson. The court noted the inconsistencies between the second student's deposition testimony and her testimony at trial and found that she "had a diminished recollection of events and appeared somewhat confused in her recollections." Similarly, the court found that the fourth student's testimony was "not helpful" because she "was inconsistent in her recollections and seemed to exaggerate her claims about the extent of the flooding." Finally, with respect to Ms. Halvorson, the court noted that she testified inconsistently on the issue of whether the fourth student witnessed her fall. The court remarked that "At trial, Ms. Halvorson testified that [the fourth student] left the locker room before she fell and did not see the fall. Then, during cross examination she conceded that she had previously testified that [the fourth student] did see her fall and they both laughed." Ultimately, the court concluded that Ms. Halvorson's recollection of the accident was "frankly not very good." We find that the district court's credibility determinations are supported by the record. Even if the court had found all of the witnesses to be credible, however, we note that the testimony of the students who participated in the swimming class at East Junior High School is largely unsupportive of Ms. Halvorson's theories that water backed up in the drain near the dressing area or that "water from the shower built up within the curb around the shower area to the point it spilled over the curb and flowed onto the dressing area." As a result, considering that water carried from wet feet and bodies, as opposed to water "flowing" over a shower boundary, is generally unavoidable in a locker room and does not tend to indicate a substandard degree of care, a critical piece of Ms. Halvorson's theory of negligence lacked solid evidentiary support.

[¶14] We find additional evidence in the record to support the district court's determination that the School District exercised ordinary care to ensure that the locker room floor was not unreasonably dangerous. We note that Ms. Halvorson presented no evidence or testimony indicating that the drainage system in the locker room was inadequately designed or constructed. Richard Bettolo, who has been employed as a plumber for the School District for 16 years, stated that he had been required to use a "snake" to unclog the drain in the locker room on only one occasion, suggesting that clogging was not a common occurrence. Further, the evidence indicated that the locker room floor was regularly cleaned by janitorial staff. Jolene Sliger, the head custodian at East Junior High School, testified that the floor was cleaned and disinfected on a daily basis. After sweeping or vacuuming the floor, the janitorial staff applied "Re-Juv-Nal" to disinfect the floor every night and, in accordance with the product instructions, did not rinse the disinfectant after it was applied. She stated that the floors were never polished or waxed. Further, during the summers, the locker room floor was scrubbed and rinsed as part of a deep clean of the entire school.

[¶15] The evidence also indicated that the School District implemented appropriate procedures to respond to complaints about slow drains resulting from hair and other debris. If a teacher or student reported that a drain was slow, Ms. Sliger informed

maintenance and placed an entry in a work order log. Ms. Sliger testified that reports of slow drains were typically addressed by maintenance on the same day that the reports were received. The work order log kept by the School District indicated that a slow drain was reported in December 2006, eight months prior to Ms. Halvorson's accident, and in March 2008, approximately six months after the accident. No reports of a slow or clogged drain were made in the days before or after Ms. Halvorson's accident.

[¶16] Finally, the parties offered conflicting expert testimony and measurements relating to the degree of slipperiness of the locker room floor. Both parties' experts measured the "coefficient of friction" on the locker room floor in 2010 to determine the degree of slipperiness of the floor. A coefficient of .5 or greater is considered safe under the industry standard. Dr. William Rowley, a mechanical engineer, testified that the floors exhibited a .54 coefficient of friction against a bare foot. Gerald Halweg, however, measured the coefficient of friction using leather and neolite, a material commonly used for shoe soles. He determined that the coefficient of friction ranged from .26 to .43, depending on the material used and whether the material was wet or dry. Mr. Halweg also testified that the janitorial staff had applied Re-Juv-Nal incorrectly and that he had found residue on tiles in the locker room.

[¶17] The district court took issue with the testimony of both experts. With respect to Mr. Halweg's testimony, the court noted that

> His opinion that the custodial staff used Rejuvnal incorrectly by not rinsing it because they did not follow the instructions is directly contradicted by the instructions. His opinion that the custodial staff used cross-contaminated mops, based on a statement of an unidentified person, deserves little weight. His opinion that tile samples taken several years after the fall are covered by a residue is not supported by any testing to identify the residue, or even so much as a picture.

With respect to Dr. Rowley's testimony, the court found that

> his testimony suffers from one of the same flaws as Mr. Halweg['s]. He testified that he conducted eight measurements of the friction angle, . . . but only reported one measured value of the coefficient of friction, failing to offer any description of how accurate his measurements are, such as, for example, a confidence interval. . . . [W]ithout more information the Court is unable to assess how reliable his friction measurements are.

We find that the weight accorded to the expert testimony by the district court is supported

7

by the evidence contained in the record and by sound reasoning. We would add, however, that the measurements of the slipperiness of the floor in 2010 indicate very little about the condition of the floor in 2007, when Ms. Halvorson's accident occurred. We find a more salient point in the fact that, as noted by the district court, the experts agreed that the type of tile used in the locker room is considered safe in the industry, and that the tile was appropriate for pool, shower, and locker room application.

[¶18] Based on the evidence recited above, the district court concluded that Ms. Halvorson had not proved that the floor of the locker room was unreasonably slippery:

> Even if the Court assumes that the tile floor of the locker room would be unreasonably dangerous with too much soapy water on it, the Court finds . . . that the Plaintiff has not proved that excessive or unreasonably dangerous amounts of water or soapy water existed on the floor of the locker room at the time the Plaintiff fell.

The court further concluded that

> Even if the Court assumed that the drain was backed up and tile with soapy water on it was unreasonably dangerous, the Court would find that the Plaintiff has not shown that a reasonable person would not rely on student complaints as notice of a need to fix a clog. It is not reasonable to expect all or most parts of any building to be covered by routine maintenance every year, and common sense dictates that absent a pattern of problems . . . , drains need not be fixed before they are clogged. Moreover, the Court must consider how a reasonable person would evaluate this situation *ex ante.* A reasonable person would not be troubled by the possibility of a temporarily backed up drain in a pool locker room because the floor of a pool locker room is designed to accommodate and will inevitably have some soapy water.

Considering the evidence contained in the record as a whole, we are not left with the definite and firm conviction that a mistake has been made. As noted above, the evidence that the drains functioned improperly in the area where Ms. Halvorson fell was disputed. Further, the evidence indicates that the floors were regularly cleaned by janitorial staff, and that procedures were in place to address water collection caused by slow drains. We find no clear error in the district court's conclusion that Ms. Halvorson did not carry her burden of proving the School District failed to exercise ordinary care to keep the locker room floor in a reasonably safe condition.

8

[¶19] Because we find no clear error in the district court's conclusion that Ms. Halvorson failed to carry her burden of proving the existence of a dangerous condition, or that the School District did not exercise ordinary care to prevent water from accumulating on the locker room floor, the operating methods rule is not applicable in the present case. The operating methods rule relieves a plaintiff from the burden of showing that the defendant had notice of a dangerous condition. However, the plaintiff must still prove the existence of a dangerous condition caused by the failure to use ordinary care in the manner in which the proprietor conducts his business. Ms. Halvorson relies on *Rhoades* to support her assertion that the district court erred by failing to apply the operating methods rule. Unlike that case, however, where the plaintiff demonstrated a dangerous condition created by a spilled substance, Ms. Halvorson did not show the existence of a dangerous condition in this case. *Id.*, 863 P.2d at 628. Under these circumstances, the operating methods rule is not applicable. Similarly, because we find no error in the district court's conclusion that Ms. Halvorson failed to carry her burden of proving the existence of a dangerous condition, we need not address the issue of whether the School District had a duty to repair a dangerous condition. The district court's decision in Docket No. S-14-0083 is affirmed.

**Docket No. S-14-0084**

[¶20] In Docket No. S-14-0084, the School District challenges the district court's denial of its motion for summary judgment under the Wyoming Recreation Safety Act. Pursuant to the WRSA, a participant "in any sport or recreational opportunity assumes the inherent risks in that sport or recreational opportunity." Wyo. Stat. Ann. § 1-1-123(a) (LexisNexis 2013). "Inherent risks" are defined as "those dangers or conditions which are characteristic of, intrinsic to, or an integral part of any sport or recreational opportunity." Wyo. Stat. Ann. § 1-1-122(a)(i). According to the School District, the district court erred in concluding that showering is not an "inherent risk" of swimming under the WRSA.

[¶21] Because we affirm the district court's decision in favor of the School District in Docket No. S-14-0083, we do not need to determine whether the district court erred in denying the School District's motion for summary judgment. Additionally, we note that challenges to the denial of a defendant's summary judgment motion are generally not reviewable. *Irene v. Seneca Ins. Co.*, 2014 WY 145, ¶ 23, 337 P.3d 483, 492 (Wyo. 2014). As we explained in *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813 (Wyo. 1994), the denial of summary judgment is an interlocutory order and merges with the final judgment:

> The denial of a motion for summary judgment is not an appealable order. *St. Paul Fire and Marine Ins. Co. v. Albany County School Dist. No. 1*, 763 P.2d 1255, 1257 (Wyo. 1988); *Kimbley v. City of Green River*, 663 P.2d 871, 888 (Wyo.

1983); *Boyles Galvanizing & Plating Co. v. Hartford Acc. & Indem. Co.*, 372 F.2d 310, 312 (10th Cir. 1967). When a motion for summary judgment is denied, an interlocutory order is issued after the district court rules that genuine issues of material fact are disputed and the moving party is not entitled to a judgment as a matter of law. W.R.C.P. 56(c). Generally, interlocutory orders are not appealable. W.R.C.P. 54(b). The unresolved issues presented in a motion for summary judgment which is denied merge with the final judgment which is subject to appeal. *Morgan v. American University*, 534 A.2d 323, 327 (D.C.App. 1987). However, even in an appeal of a final judgment, the pre-trial denial of a motion for summary judgment is not generally reviewed. *All-States Leasing Co. v. Pacific Empire Land Corp.*, 31 Ore. App. 733, 571 P.2d 192, 194 (1977). *See* R. F. Chase, Annotation, *Reviewability of Order Denying Motion For Summary Judgment*, 15 A.L.R.3d 899 (1967) (collecting cases). The denial of the summary judgment becomes, in effect, moot except in rare cases. *E.E.O.C. v. Sears, Roebuck & Co.*, 839 F.2d 302, 353 n.55 (7th Cir. 1988); *Fleitz v. Van Westrienen*, 114 Ariz. 246, 560 P.2d 430, 433 (1977).

*Id.* at 820. Accordingly, we decline to review the School District's challenge to the denial of its motion for summary judgment. The School District's appeal in Docket No. S-14-0084 is dismissed.