# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 115

APRIL TERM, A.D. 2015

August 21, 2015

RICHARD J. AMOS, JR., Wrongful
Death Personal Representative of
TAYLOR J. AMOS LYSAGER,
deceased,

Appellant
(Plaintiff),

v.

LINCOLN COUNTY SCHOOL
DISTRICT NO. 2; and LINCOLN
COUNTY BOARD OF COUNTY
COMMISSIONERS, for the County of
Lincoln, Wyoming,

Appellees
(Defendants).

S-14-0283

*Appeal from the District Court of Lincoln County*
*The Honorable Dennis L. Sanderson, Judge*

*Representing Appellant:*
> James K. Lubing and Leah Corrigan of Lubing & Corrigan, LLC, Jackson, WY. Argument by Ms. Corrigan.

*Representing Appellees:*
> Stuart R. Day of Williams, Porter, Day & Neville, P.C., Casper, WY for Appellee Lincoln County School District No. 2; and Thomas A. Thompson* and Phillip R. Wulf of McPherson, Kelly, & Thompson, LLC, Rawlins, WY; for Appellee Lincoln County Board of County Commissioners. Argument by Messrs. Day and Wulf.

*Before BURKE, C.J., and HILL, **KITE, DAVIS, and FOX, JJ.*

*Order allowing withdrawal of counsel and substitution of counsel entered on December 31, 2014.

** Justice Kite retired from judicial office effective August 3, 2015, and pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2015) she was reassigned to act on this matter on August 4, 2015.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]   Five-year-old Taylor Lysager was attending a community basketball game at a former school building in Etna, Wyoming, when an unsecured lunchroom bench fell on him, causing a fatal head injury.  Taylor Lysager's personal representative filed a wrongful death action against Lincoln County School District No. 2 (School District), the Town of Thayne, Wyoming, and the Lincoln County Board of County Commissioners (Lincoln County).  The district court dismissed Lincoln County from the action without prejudice based on Lincoln County's affidavit of non-involvement.  The court thereafter entered summary judgment for the School District after finding no genuine issues of material fact on the questions of breach of duty and proximate cause.  Plaintiff appeals both orders.

[¶2]   We conclude that the order dismissing the action against Lincoln County is not a final appealable order and dismiss Plaintiff's appeal from that order.  As to the order granting the School District summary judgment, we find that while the material facts are largely undisputed, reasonable minds might differ on the conclusions to be drawn from those facts.  This precludes summary judgment, and we therefore reverse.

## ISSUES

[¶3]   The dispositive issues presented by this appeal are:

> 1.      Did the district court err in granting the School District's motion for summary judgment?
> 2.      Is the district court's order granting Lincoln County's motion to dismiss without prejudice a final appealable order?

## FACTS

### A.      Ownership of the Metcalf School Building

[¶4]   In 2008, the School District completed construction of a new school in Etna, Wyoming.  With the completion of this new school, the School District stopped using the Metcalf School in Etna, leaving that building vacant.  The School District listed the Metcalf School building for sale and upon doing so was approached by area residents who expressed a desire to convert the school into a community center.  Those residents formed a group, referred to herein as the "Community Group," that went by various names, including Etna Community Center Group, North Lincoln Community Center Group, and the Star Valley Community Center.  After the Community Group presented its ideas for the Metcalf School building to the School District, the District decided to give the Community Group an opportunity to find a way to acquire the building.

1

[¶5]    In April 2009, the Community Group approached the Lincoln County Board of County Commissioners with a proposal to have Lincoln County support the Community Group in an application for a Wyoming community facilities grant for the Metcalf School building.  Lincoln County agreed to pay for a feasibility study and sponsor the Community Group's facilities grant and loan application.  To that end, the Lincoln County Board of County Commissioners held a public meeting on August 11, 2009 and voted to approve the grant application, agreeing to the condition that if the grant were awarded, Lincoln County would assume ownership of the Metcalf School building.  Because the grant application required documentation verifying that ownership of the Metcalf School building would transfer to Lincoln County, the School District executed a Purchase Agreement, which bore an August 2009 date and was signed by the chairman of the School District's Board of Trustees.  That Purchase Agreement was submitted with the August 2009 grant application but was not yet approved by Lincoln County or signed by a representative of Lincoln County.

[¶6]    On January 28, 2009, the State Loan and Investments Board approved the community facilities grant for the Metcalf School building.  On March 3, 2010, Lincoln County and the School District, each acting through its respective board, agreed to terms of a purchase agreement for the sale of the building to Lincoln County.  On April 2, 2010, a quitclaim deed dated March 31, 2010, was recorded with the Lincoln County Clerk transferring ownership of the Metcalf School building from the School District to Lincoln County.

**B.    Use of the Metcalf School Building and Taylor Lysager's Accident**

[¶7]    At the end of July 2009, while Lincoln County was still considering the community facilities grant application, the School District changed the locks on the Metcalf School building and gave the Community Group keys to the building.  Shortly thereafter, before the grant was approved and ownership of the Metcalf School building had been transferred to Lincoln County, numerous groups, working through the Community Group, began using the building for their activities.  One group that frequently used the building was the Town of Thayne's Recreation Program, which used the facility for activities such as volleyball and basketball.  These activities took place in a part of the building that served the dual purpose of providing both a lunchroom and gymnasium.  To accommodate both uses, the area was equipped with heavy tables and benches that folded into the wall and, for safety purposes, were then latched into place and locked with a key.  The gymnasium also incorporated an elevated stage with storage rooms on each side of the stage.

[¶8]    On February 9, 2010, the Town of Thayne held one of its basketball games in the Metcalf School building.  Taylor Lysager, who was five years old on that date, attended the game with his grandparents, and during the game was playing with other children on

2

the stage. It is unknown who did it or when it was done, but a lunchroom bench had been removed from the gymnasium wall and placed in one of the storage rooms adjacent to the stage, propped against the wall. While playing, Taylor slid into that storage room and into the lunchroom bench propped against the wall. The bench tipped over and fell on top of Taylor, and he suffered a basal skull fracture, which the coroner reported likely caused death instantly.

## C.    **Wrongful Death Action**

[¶9]    On April 12, 2011, Taylor Lysager's personal representative filed a wrongful death action against the School District, the Town of Thayne, and Lincoln County. On June 15, 2011, Lincoln County filed an affidavit of noninvolvement in lieu of an answer. On October 25, 2011, the district court entered an order dismissing Lincoln County from the action based on the affidavit of noninvolvement. The court specified that the dismissal was without prejudice and commented:

> The statute of limitation issue is of particular concern and the Court specifically finds the plaintiff has done what they can at this time but if there is a factual basis discovered at a later time in the proceedings so Lincoln County can be "reinstated" in this action and plaintiff shall not be denied their day in Court because of a limitation claim. It is specifically found the claim and action against Lincoln County was timely filed. At this time, the Court finds there are not enough facts to show that Lincoln County is responsible but if facts come forward or are discovered that show that Lincoln County is responsible, either directly or indirectly, Lincoln County shall be reinstated as a Defendant[.]

[¶10]    The action against the Town of Thayne and the School District continued, and on April 19, 2013, the School District filed a motion for summary judgment. It argued that because the School District had turned over possession and maintenance of the Metcalf School building to the Community Group, the District owed no duty to Taylor Lysager and was thus entitled to judgment as a matter of law. On December 11, 2013, the district court issued a decision letter denying the School District's motion for summary judgment. The court explained:

> Viewing these basic facts in a light most favorable to the Plaintiff, the School District, as the owner, is in the same position as a landlord is to its tenants and their invitees. As such, it owed all persons entering the building as invitees the duty of reasonable and ordinary care under the circumstances.

3

*Merrill v. Jansma*, 2004 WY 26, ¶ 39, 86 P.3d 270, 287 (Wyo. 2004). Although the issue of what is the duty of a person is a question of law, whether that duty of reasonable care has been breached is a question of fact for the jury to resolve. Because the Defendant had a duty of reasonable and ordinary care, the motion of the Defendant on the basis that no duty was owed to the Plaintiff is denied.

[¶11] Although the district court denied the School District's motion on the question of duty, the court also expressed concerns that the facts may not establish a breach of that duty or that the District's actions were a proximate cause of the accident. Because those questions were not addressed in the School District's first summary judgment motion, the court allowed the School District twenty days to file a supplemental or second summary judgment motion.

[¶12] On December 31, 2013, the School District filed a renewed summary judgment motion, this time arguing that the School District did not breach its duty of care and that its actions were not the proximate cause of Plaintiff's injuries. On June 23, 2014, the district court held a hearing on the School District's renewed motion of summary judgment and ruled during that hearing:

> But it boils down to this, is that we've got someone who left that leaning against the wall. I have no evidence. You know, you can put it under a breach of duty or causation. That's essentially a foreseeable thing. I don't find sufficient evidence to show that the School District – that either one, the element of breach of duty or the element of causation, that that is sufficiently met to have it go to a jury.
> * * * *
> I guess [the] best way I can put it is somebody left that bench leaning up against the wall. It may have been in an out-of-the-way place but we don't know who did that and, essentially, that is the negligence.

[¶13] On September 22, 2014, the district court issued its order granting the School District's renewed motion for summary judgment. The order incorporated the transcript from the court's hearing on the motion and further provided:

> [T]here are no genuine issues of material fact and [the School District] is entitled to judgment as a matter of law because the actions and conduct [the School District] were not a direct, proximate cause of the accident that is the subject of the above captioned action or of the injuries alleged in this action.

4

In accordance with W.R.C.P. 54(b), the Court determines that there is no just reason for delay and thus directs entry of a final judgment as to the granting of summary judgment for Lincoln County School District No. 2 only.

[¶14] Plaintiff thereafter filed a notice of appeal, designating as the orders appealed both the order granting the School District's renewed motion for summary judgment and the order dismissing Lincoln County based on its affidavit of noninvolvement.

## STANDARD OF REVIEW

[¶15] We apply the following standard of review to a district court's grant of summary judgment in a negligence case:

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards. *Gayhart v. Goody*, 2004 WY 112, ¶ 11, 98 P.3d 164, 168 (Wyo.2004). Summary judgment is proper only when there are no genuine issues of material fact, and the prevailing party is entitled to judgment as a matter of law. *Id*. Summary judgments are not favored in negligent actions. *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 12, 126 P.3d 886, 889 (Wyo.2006). However, summary judgments have been upheld in negligence cases where the record did not establish a genuine issue of material fact. *Id*.

> *Uinta County v. Pennington*, 2012 WY 129, ¶ 11, 286 P.3d 138, 141-42 (Wyo.2012).

> The party requesting summary judgment bears the initial burden of establishing a prima facie case that no genuine issue of material fact exists and that summary judgment should be granted as a matter of law. W.R.C.P. 56(c); *Throckmartin v. Century 21 Top Realty*, 2010 WY 23, ¶ 12, 226 P.3d 793, 798 (Wyo.2010). Until the movant has made a prima facie showing that there are no genuine issues of material fact, the non-movant has no obligation to respond to the motion with materials beyond the pleadings. *Id*.

> Once a prima facie showing is made, the burden shifts

to the party opposing the motion to present evidence showing that there are genuine issues of material fact. *Boehm v. Cody Cntry. Chamber of Commerce*, 748 P.2d 704, 710 (Wyo.1987) (citing *England v. Simmons*, 728 P.2d 1137, 1140–41 (Wyo.1986)). The party opposing the motion must present specific facts; relying on conclusory statements or mere opinion will not satisfy that burden, nor will relying solely upon allegations and pleadings. *Boehm*, 748 P.2d at 710. However, the facts presented are considered from the vantage point most favorable to the party opposing the motion, and that party is given the benefit of all favorable inferences that may fairly be drawn from the record. *Caballo Coal Co.*, ¶ 12, 246 P.3d at 871.

Summary judgments are not favored in negligence actions and are subject to exacting scrutiny. *Erpelding v. Lisek*, 2003 WY 80, ¶ 10, 71 P.3d 754, 757 (Wyo.2003). However, even in negligence actions, "where the record fails to establish an issue of material fact, [and when the movant is entitled to judgment as a matter of law], the entry of summary judgment is proper." *Allmaras v. Mudge*, 820 P.2d 533, 536 (Wyo.1991) (alteration in original) (citing *MacKrell v. Bell H2S Safety*, 795 P.2d 776, 779 (Wyo.1990)).

*Johnson v. Dale C.*, 2015 WY 42, ¶¶ 12-15, 345 P.3d 883, 886-87 (Wyo. 2015).

**DISCUSSION**

A.  **Order Granting Summary Judgment**

[¶16]  To establish a claim for negligence, a plaintiff must show: (1) the defendant owed the plaintiff a duty of reasonable care; (2) the defendant breached that duty; and (3) the defendant's breach was the proximate cause of injury or loss to the plaintiff.  *Halvorson v. Sweetwater County Sch. Dist. No. 1*, 2015 WY 18, ¶ 9, 342 P.3d 395, 398 (Wyo. 2015) (citing *Collings v. Lords*, 2009 WY 135, ¶ 6, 218 P.3d 654, 656 (Wyo. 2009)); *see also Johnson*, ¶ 16, 345 P.3d at 887.  Here, the district court found that the School District owed Plaintiff a duty of reasonable care, but it concluded based on the undisputed facts and as a matter of law that the School District had not breached that duty and that the School District's conduct was not a proximate cause of Plaintiff's injuries.  The district court's decision was based on its conclusion that if there were negligence in this case it was in the leaning of the lunchroom bench unsecured against a wall and its finding that the undisputed facts established that no one from the School District placed the bench and the School District had no knowledge that the bench had been so placed.

6

[¶17] Plaintiff did not oppose the School District's summary judgment motion with evidence showing that a School District employee placed the lunchroom bench in the storage room or that it knew or should have known of the bench's placement. What Plaintiff argued below and what he argues on appeal is that regardless of who mishandled the bench, it remains a jury question whether the School District breached its duty of reasonable care by failing to warn the Community Group of the dangers of mishandling the lunchroom benches and tables and by failing to restrict access to the keys used to unlock the benches and tables. Plaintiff further argues that whether that failure to warn and restrict access was a proximate cause of the accident and Plaintiff's damages is also a jury question. We agree.

[¶18] As we noted in our standard of review above, summary judgments are not favored in negligence actions. We have explained:

> We are reminded of what was stated in *Loney v. Laramie Auto Co.*, 36 Wyo. 339, 354, 255 P. 350, 354, 53 A.L.R. 73, that: "The issue of negligence or contributory negligence is ordinarily one to be determined by the jury. 20 R.C.L. 109, 166. That is true, even in a case where the testimony, as in the case at bar, is undisputed, if *different minds* may fairly arrive at different conclusions, and where the inferences from the facts are not so certain that all reasonable men, in the exercise of fair and impartial judgment, must agree upon them." And in 65 C.J.S., Negligence, § 252, p. 1129, it is stated that: "The question whether the conduct of defendant measured up to the standard of 'ordinary care,' 'reasonable prudence,' 'due diligence,' 'reasonable care,' or the like is usually to be determined by the jury under proper instructions." In *Phillips v. Denver City Tramway Co.*, 53 Colo. 458, 128 P. 460, 462, Ann.Cas.1914B, 29, the court in stating the rule as to the determination of negligence said: "It is only in the clearest of cases, when the facts are undisputed and it is plain that all intelligent men can draw but one inference from them, that the question is ever one of law for the court." [Emphasis added.]

*Jackson Hole Mt. Resort Corp. v. Rohrman*, 2006 WY 156, ¶ 8, 150 P.3d 167, 170 (Wyo. 2006) (quoting *Templar v. Tongate*, 71 Wyo. 148, 255 P.2d 223, 230 (Wyo. 1953)) (footnote omitted).

[¶19] For the reasons we discuss hereinafter, we conclude that reasonable minds could differ both on the question whether the School District breached its duty of reasonable

care and on the question whether its conduct was a proximate cause of the accident. We thus agree with Plaintiff that these are questions that are properly submitted to the jury rather than resolved on summary judgment.

## 1.    **Breach of Duty**

[¶20]  With regard to a property owner's duty of care, this Court has held that "a premises owner must use ordinary care to keep the premises in a safe condition and is charged with an affirmative duty to protect visitors against dangers known to him and dangers discoverable with the exercise of reasonable care." *Hendricks v. Hurley*, 2008 WY 57, ¶ 12, 184 P.3d 680, 683 (Wyo. 2008) (citing *Rhoades v. K–Mart Corp.*, 863 P.2d 626, (Wyo. 1993)).  Ordinary care means "that care which an ordinarily careful person would exercise under all the circumstances of the case." *Wyrulec Co. v. Schutt*, 866 P.2d 756, 762 (Wyo. 1993) (quoting *Pan Am. Petroleum Corp. v. Like*, 381 P.2d 70, 72–74 (Wyo. 1963)).  We have further explained:

> A landowner in Wyoming owes a general duty to "act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk."

*Berry v. Tessman*, 2007 WY 175, ¶ 9, 170 P.3d 1243, 1245 (Wyo. 2007) (quoting *Clarke v. Beckwith*, 858 P.2d 293, 296 (Wyo. 1993)).

[¶21]  With the exception of the identity of the individual who placed the bench in the storage room, the material facts in this matter are not in dispute. We emphasize again, however, that even where the material facts are largely undisputed, the question of whether a defendant breached its duty is generally one left to the finder of fact. We have explained:

> The question of breach is often considered to be one of fact. *See generally Johnson v. Reiger*, 2004 WY 83, ¶ 23, 93 P.3d 992, 999 (Wyo.2004); *Lee v. LPP Mortg. Ltd.*, 2003 WY 92, ¶ 20, 74 P.3d 152, 160 (Wyo.2003); and *Jones v. Chevron U.S.A.*, 718 P.2d 890, 897 (Wyo.1986). This is particularly true when "there appears to be no great disagreement about the evidentiary facts, but the evidence is subject to conflicting interpretations or reasonable minds might differ as to its significance...." *Roussalis v. Wyoming Med. Ctr., Inc.*, 4 P.3d 209, 229 (Wyo.2000). *See also Bettencourt v. Pride Well Serv.*, 735 P.2d 722, 726 (Wyo.1987) (issue should be submitted to the fact finder if reasonable minds could reach

8

different conclusions and inferences from facts, even when facts bearing upon negligence are undisputed).

*Foote v. Simek*, 2006 WY 96, ¶ 16, 139 P.3d 455, 461-62 (Wyo. 2006).

[¶22] It is undisputed that on the date of Taylor Lysager's accident, the School District owned the Metcalf School building and had turned the building over to the Community Group for its use. In opposition to the School District's summary judgment motion, Plaintiff submitted evidence that: there was no written agreement governing the Community Group's use of the building; no instructions or directives were given to the Community Group; the School District did not conduct a walk-through with the Community Group to identify potential safety issues or hazards; and no steps were taken to restrict access to the keys to the lunchroom benches and tables. The question then is whether the School District used ordinary care under the circumstances when it turned over possession of the building to the Community Group without taking steps to restrict access to the keys that unlocked the lunchroom benches and tables and without warning the Community Group of the dangers of mishandling those benches and tables.

[¶23] On this question, Plaintiff submitted the deposition testimony of: Steve Rich, the School District's facilities manager; Alan Linford, a former principal at Star Valley Middle School and former school board chairman; and Justin Pierantoni, the principal of the former Metcalf School. Steve Rich testified that the tables and benches were too heavy for him to lift on his own and that if precautions were not taken to secure them, they could cause injury. He further testified:

> Q.    If you had known that that table was on the stage and a basketball game was going on, what would have been your impression or opinion about that situation?
> [Defense Counsel]:  Object to the form of the question. If you have an opinion.
> Q.    (By [Plaintiff's counsel])  Leaned up the way you understand it to have been?
> A.    Leaned up the way it was, it – it was dangerous.

Alan Linford testified:

> Q.    Are you familiar with the benches in that Metcalf School like the one that killed Taylor Lysager?
> A.    Yes.
> Q.    Do you believe that those benches are dangerous if they're just leaned up against the wall and not secured in some fashion?
> A.    Yes.

9

Q. And why is that?
A. They're supposed to be in a frame with a lock that you slide into the wall and lock them, and if it's just leaning against the side of the wall, it would be – it would be dangerous.

[¶24] Justin Pierantoni testified that the bench was dangerous leaned up against the wall and if children were going to be in the area, the bench should have been either locked back into place on the wall or placed on its side. He further testified:

Q. * * * And just for clarity and for the record, why would you think that's dangerous for it to be upright against the wall?
A. I – I would – my fear would be is that it would scissor out if it got – because it's on wheels.

[¶25] Based on this evidence, we conclude that reasonable minds might differ on the question of whether the School District knew or should have known that the lunchroom tables and benches were dangerous if not handled and stored properly. Reasonable minds might also differ on the question of whether ordinary care under these circumstances required that the School District take precautions when turning over possession of the building to the Community Group, such as restricting access to the keys to the lunchroom benches and tables or warning of the dangers of mishandling or improper storage of the benches and tables. In other words, reasonable minds could differ on the question of whether the School District breached its duty of care, and the question is one properly submitted to the jury.

## 2. Proximate Cause

[¶26] We turn next to the district court's conclusion that based on the undisputed evidence, the School District's conduct was not, as a matter of law, the proximate cause of the accident and Plaintiff's damages. In particular, the court found, as a matter of law, that the placement of the bench in the storage room by an unknown individual or individuals was an intervening cause:

It appears to me that whatever we have here, that the [sic] whoever did it is an intervening force, who left that up, and we don't know who it is. So I find that even if the School District was a cause, it was not – it was overwhelmed by whoever left it up there.

[¶27] We have distinguished proximate cause, remote cause, and intervening cause as follows:

10

In order for proximate cause to exist, "the accident or injury must be the natural and probable consequence of the act of negligence." *Foote v. Simek*, 2006 WY 96, ¶ 22, 139 P.3d 455, 463 (Wyo.2006). In fact, "[t]he ultimate test of proximate cause is foreseeability of injury. In order to qualify as a legal cause, the conduct must be a substantial factor in bringing about the plaintiff's injuries." *Foote*, ¶ 22, 139 P.3d at 464. In our consideration of cases involving proximate cause, we have discussed not only what constitutes proximate cause, but also what does not:

In *Lemos v. Madden*, 28 Wyo. 1, 200 P. 791, 793 (1921), this court first defined proximate cause as "[t]hat which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." This same definition has been relied upon in recent years. *Robertson v. TWP, Inc.*, 656 P.2d 547 (Wyo.1983); *Kopriva v. Union Pacific R. Co.*, 592 P.2d 711 (Wyo.1979). In *Lemos v. Madden, supra*, 200 P. at 794, the court also rejected a "but for" rule of causation, stating:

" * * * *But if the original wrong furnished only the condition or occasion, then it is the remote and not the proximate cause, notwithstanding the fact that there would have been no loss or injury but for such condition or occasion.* * * * "

In later cases our court has identified legal causation as that conduct which is a substantial factor in bringing about the injuries identified in the complaint. *McClellan v. Tottenhoff*, Wyo. 666 P.2d 408 (Wyo.1983); *Chrysler Corporation v. Todorovich*, 580 P.2d 1123 (Wyo.1978); *Phelps v. Woodward Construction Co.*, 66 Wyo. 33, 33, 204 P.2d 179 (Wyo.1949). The obvious rationalization of that approach with the two propositions found in *Lemos v. Madden, supra*, is that if the conduct is "that cause which in natural and continuous sequence, unbroken by a sufficient intervening cause produces the injury, without which the result would not have occurred," it must be identified as a substantial factor in bringing about the harm. If, however, it created only a condition or occasion for the harm to occur then it would be

11

regarded as a remote, not a proximate, cause, and would not be a substantial factor in bringing about the harm. An alternative method for explaining these concepts is found in the discussions of intervening cause in our cases. *McClellan v. Tottenhoff, supra*; *Kopriva v. Union Pacific R. Co., supra*; *Gilliland v. Rhoads*, 539 P.2d 1221 (Wyo.1975); *Fagan v. Summers*, 498 P.2d 1227 (Wyo.1972); and *Tyler v. Jensen*, 75 Wyo. 249, 295 P.2d 742 (Wyo.1956). ***An intervening cause is one that comes into being after a defendant's negligent act has occurred, and if it is not a foreseeable event it will insulate the defendant from liability. It is reasonably foreseeable if it is a probable consequence of the defendant's wrongful act or is a normal response to the stimulus of the situation created thereby.*** *Killian v. Caza Drilling, Inc.*, 2006 WY 42, ¶ 20, 131 P.3d 975, 985 (Wyo.2006).

*Lucero v. Holbrook*, 2012 WY 152, ¶ 17, 288 P.3d 1228, 1234-35 (Wyo. 2012) (quoting *Collings v. Lords*, 2009 WY 135, ¶ 6, 218 P.3d 654, 656–57 (Wyo. 2009)) (emphasis in original).

[¶28]  In *Buckley v. Bell*, 703 P.2d 1089, 1093 (Wyo. 1985), this Court elaborated on the factors to be considered in determining whether an intervening cause will insulate a defendant from liability by citing to the Restatement (Second) of Torts.

Section 442 then lists those considerations important in determining whether an intervening force is a superseding cause. The text language is:

"§ 442. Considerations Important in Determining Whether an Intervening Force is a Superseding Cause

"The following considerations are of importance in determining whether an intervening force is a superseding cause of harm to another:

"(a) The fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

12

"(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

"(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

"(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

"(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion."

*Buckley*, 703 P.2d at 1093.

[¶29] As with the question of breach of duty, the question of proximate cause is one "reserved for the trier of fact's determination unless the evidence is such that reasonable minds could not disagree." *Glenn v. Union Pacific R.R. Co.*, 2008 WY 16, ¶ 15, 176 P.3d 640, 644 (Wyo. 2008) (quoting *Duncan v. Town of Jackson*, 903 P.2d 548, 553 (Wyo. 1995)). The question in this case is whether the mishandling or improper storage of the lunchroom bench was a natural or probable consequence, or a foreseeable consequence, of the School District's failure to instruct or warn the Community Group on the proper handling and storage of the tables and benches or its failure to restrict access to the keys to the tables and benches. In other words, if the gravity of the danger had been addressed with the Community Group, might that have changed the manner in which the tables and benches were handled and who was permitted access to the tables and benches?

[¶30] Considering these factors, we believe reasonable minds could differ in answering the questions of proximate and intervening cause. Certainly, reasonable minds might differ on the question of whether the placement of the bench in the storage room was an extraordinary act. Reasonable minds might also differ on the question of whether the placement of that bench was an intervening force that acted independently from any conduct on the part of the School District. For example, the record contains evidence that before the accident involving Taylor Lysager, another child was injured when a table or bench fell from the wall and struck the child. Reasonable minds might differ on whether that suggests that the Community Group already had notice of the need to properly secure the tables and benches and that any additional warning by the School District would have been of little or no consequence.

[¶31] Our intent here is not to outline each conceivable question related to proximate cause on which reasonable minds might differ but instead to illustrate that the question is

13

truly one that belongs to the trier of fact. Because there is much on which reasonable minds might disagree with respect to proximate cause, summary judgment was not properly granted on that basis.

## B.    Order Dismissing Lincoln County

[¶32]  Plaintiff next contends the district court erred in dismissing its action against Lincoln County based on Lincoln County's affidavit of noninvolvement. Because we find that the order dismissing Lincoln County without prejudice is not a final appealable order, we dismiss this portion of Plaintiff's appeal.

[¶33]  In addressing the finality of an order under Rule 1.05 of the Rules of Appellate Procedure, this Court has said:

> A judgment or final order must determine all liabilities of all parties, Rule 54(a), W.R.C.P.; *Hoback Ranches, Inc. v. Urroz*, 622 P.2d 948 (Wyo.1981), and should leave nothing for future consideration. *Public Service Commission v. Lower Valley Power and Light, Inc.*, 608 P.2d 660 (Wyo.1980). *See* Rule 1.05, W.R.A.P.

*Stone v. Stone*, 842 P.2d 545, 548 (Wyo. 1992) (quoting *In re Big Horn River System*, 803 P.2d 61, 66 (Wyo. 1990)).

[¶34]  Rule 54(b) of the Wyoming Rules of Civil Procedure provides as follows concerning the finality of an order:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

14

W.R.C.P. 54(b) (LexisNexis 2015).

[¶35]  The district court's order granting the School District summary judgment included a Rule 54(b) certification, but expressly limited the certification to the judgment entered in favor of the School District:

> In accordance with W.R.C.P. 54(b), the Court determines that there is no just reason for delay and thus directs entry of a final judgment as to the granting of summary judgment for Lincoln County School District No. 2 only.

[¶36]  The action below is not concluded and will continue against the Town of Thayne and, now, against the School District.  In the absence of a Rule 54(b) certification, the order dismissing Plaintiff's complaint against Lincoln County without prejudice is not a final appealable order.  *See* W.R.A.P. 1.05; *see also Mobley v. McCormick*, 40 F.3d 337, 339 (10th Cir. 1994) ("dismissal of the complaint is ordinarily a non-final, nonappealable order (since amendment would generally be available)").

## CONCLUSION

[¶37] We find the district court erred in granting the School District's motion for summary judgment and reverse the entry of that order.  With respect to the district court's order dismissing the complaint against Lincoln County, we conclude that the order is not a final appealable order and dismiss the appeal of that order.

15